## DUPUY, Curator, *v.* HUNT et al.

One who has a cause of action against an absentee, cannot bring him before our courts by merely causing a curator to be appointed to represent him. Conceding that article 57 of the Civil Code, under the term *absentee,* applies to persons who have never resided in the State, it presupposes that the absentee has property in the State, or that an action has been instituted against him. If an absentee leave his property without an administrator or agent, if it be attached at the suit of a creditor, or if the absentee become a necessary party to an action between other persons lawfully in court, a curator may be appointed to represent him. Art. 57 of the Civil Code is not changed by art. 116 of the Code of Practice. The articles of the Code of Practice concerning the appointment of curators presuppose something upon which the jurisdiction of the court can properly be based. Arts. 194, 195, 924, 963, 964, of that Code must be taken together, and be construed with reference to; and in furtherance of, the provisions of the Civil Code.

Decision in the case of *Dupuy, Curator,* v. *Bemiss, ante* p. 509, affirmed.

APPEAL from the First District Court of New Orleans, *Buchanan, J.* The facts of this case are stated in the opinion of the court, *infra,* and in that pronounced in the case of *Dupuy, Curator,* v. *Bemiss, ante* p. 509.

*Dunlap, Prentiss* and *Finney,* for the appellant. The Circuit Court of the United States has no jurisdiction to order the sale of the property of a succession, while subject to the jurisdiction of the Probate Court, and in the due course of administration, in the hands of its officer, the curator. 6 Rob. 230. *Lowry, Curator,* v. *Erwin,* 9 Rob. 254. C. C. 1105. C. P. 924, ss. 9, 13. *Elliott* v. *Pearsoll et al.,* 1 Peters, 340. *Thompson* v. *Tolmie,* 2 Peters, 169. *Schroeder's Syndics* v. *Nicholson,* 2 La. 355. 4 Ib. 83. All the cases cited by the defendants are from common law States, where their administrator is seized of the goods of the estate, and is, by law, capable of standing in judgment in any court of general jurisdiction. 2 Blackstone's Comm. 126, 410, 426. He can be sued in any of the State courts, and therefore is amenable to the federal tribunals. The only question which has ever arisen in the federal courts, in regard to jurisdiction over administrators, has been in relation to their citizenship, not as to their capacity to stand in judgment and execution. In this State, curators do not occupy the position of administrators at common law; they do not hold the goods of the intestate in full and absolute property, but only *sub modo,* as agents and officers of the Probate Court, to whom alone, by the very law of their creation, they are responsible for such goods. The State courts of general jurisdiction cannot seize and sell the property of a succession, in due course of administration.

The federal courts come into the State to administer its laws; they are, *pro hac vice,* State courts. It is true, they are not subjected to the modes of procedure imposed upon the State tribunals: but, so far as the rights and qualities of property are concerned, they act wholly under the State laws. If, by the State law, any particular species of property is exempted from execution, could the federal courts execute their judgments upon such property?

The State law creates a certain court, giving it exclusive jurisdiction and control over vacant successions, and authorises it to appoint a certain officer, who shall be accountable to it alone, for the goods of a succession placed in his hands by the court. This curator has no seizin or absolute title in the goods of the succession; he has only the charge of them; he is the mere officer of the Probate Court, and by the law of his creation, accountable to it alone. The federal

,court, by pretending to assume jurisdiction over him, cannot increase either his power or his liability. He is a State officer, accountable to a particular State tribunal, for the property entrusted to his charge. In no other State tribunal can he stand in judgment, so as to render the goods of the succession in his hands subject to an execution, even though he permit a judgment to go against him in such tribunal. Such judgment might bind him personally, but could not be executed against the goods placed in his custody by the Probate Court, where the succession was opened, and from which he derived his authority.

But, it is said, if the federal court had power to render judgment, it had, necessarily, the power to execute it. That, as a general rule, we admit; but there are exceptions to it. The judgment of a federal court cannot be executed on property already seized by the sheriff, under process from a State tribunal. This has been expressly decided, in the case of *Hagan* v. *Lucas*, 10 Peters, 400. Again: a judgment cannot be executed on property not subject, by law, to execution. Suppose the legislature of this State should change entirely the the character of immovable property, and subject it to entailment. No one will pretend that, upon a judgment rendered after the passage of such a law, immovable property could be seized and sold under execution, either from the federal or any other court. If, then, the State law can exempt property from execution *in toto*; *a fortiori*, the same power can exempt it during the period of its administration, and while in the custody of the law.

If the United States Circuit Court was without jurisdiction, either *ratione personæ* or *ratione materiæ*, the decree ordering the sale of the slaves in controversy was a nullity, not only voidable, but wholly void. See authorities cited before. If the order, or decree, directing the sale, was not merely erroneous, but absolutely void, it follows that the sale made by virtue of said order or decree was equally null and void. 1 Pet. 340. 2 Howard's U. S. Rep. 43. 2 Mart. N. S. 1. 8 Ib. N. S. 176.

*Grymes*, for the defendants, contended that the Circuit Court of the United States had jurisdiction, and that its judgment was conclusive, citing Const. U. S. art. 3, sec. 2. Act of Cong. of 1789. Gordon's Dig. 149, no. 575. 5 Cond. Rep. 542. 4 Dallas, 12. 1 Cond. Rep. 210. 3 Wheaton, 212. 4 Ib. 108. 8 Ib. 642. 10 Ib. 152. 1 Peters, 623. 6 Ib. 291. 14 Ib. 72. 1 Kent's Com. 295, 342, 348.

The judgment of the court was pronounced by

EUSTIS, C. J. This suit was instituted for the recovery of certain slaves alleged to belong to the succession of *Claudius Gibson*, and for damages for their caption and detention. *William Hunt* and *A. S. Robertson* are made defendants, and the sum of four thousand dollars is sought to be recovered from them, *in solido*, being the alleged value of the hire of the slaves, since March 26th, 1842, the time of the taking possession of the slaves by the defendants. Judgment is prayed for against *Hunt* for the slaves, which are alleged to be in his possession, or their value, the sum of $7,000. *Hunt* resided in the State of Mississippi. No service of the petition or citation was made on him, nor were the slaves in dispute, or any other property of his, reached by the process of the court. By a supplemental petition judgment was prayed for against *Robertson*, for the value of the slaves, and also the appointment of a curator *ad hoc* to represent *William Hunt*. Process was served on the attorney appointed curator *ad hoc*, who, in his capacity *as curator only*, appeared, and prayed that the suit might might be transferred to the Circuit Court of the United States for this district, *Hunt* being a citizen and resident of Mississippi. It was objected to this application that, the removal of the cause could not be ordered at the instance of a *curator ad hoc* merely; and the application was disallowed.

The curator *ad hoc* then pleaded formally to the jurisdiction of the court, neither the person nor property of *Hunt* having been reached by the process of the court, he being a citizen and inhabitant of Mississippi, and having had no residence or domicil in Louisiana. This plea was overruled, and the questions involved in it have been argued on the appeal.

It is to be observed that, in order to insure to the plaintiff the full benefit of his claims against the defendant *Robertson*, there is no necessity of making *Hunt* a party to this suit. The action against *Robertson* is simple, and it can have its lawful effect without making *Hunt* a party, and the question presented is, as to the power of the court to bring *Hunt* before it, for the purpose of judgment against him, under the appointment of a curator *ad hoc.* There was judgment for the defendants on the merits, and the plaintiff has appealed. We have stated the matters involved in the plea to the jurisdiction of the court made in the interest of *Hunt*, for the purpose of having it understood that we cannot assent to the correctness of the opinion of the judge of the District Court in overruling it, and in order that our assent might not be implied from our silence in regard to this point, which the conclusions to which we have come on the merits do not render it necessary to determine.

We have not been successful in finding any enactment of the legislature, or any recognised principle of law, which authorizes a plaintiff who has a cause of action against an absentee, to bring him before our courts by causing a curator to be appointed to represent him.

Conceding that article 57 of the Code, under the term *absentee*, applies to persons who have never resided in the State, that article presupposes that the absentee has property in the State, which of itself would give a court jurisdiction, or that a suit be instituted against him. In our opinion it only authorises the appointment of a curator in suits which may lawfully be instituted against the absentee, and which are pending before the judge who is called upon to make the appointment, but confers no power to bring absentees into court, on the simple demand of a creditor. If the absentee leaves his property without an administrator or agent, if it be attached at the suit of a creditor, or if an absentee becomes a necessary party to a suit between other persons lawfully in court, in the furtherance of justice the law authorises a curator to be appointed to represent him. There is then something on which the jurisdiction of the court is based, and the judgment rendered would be within the recognised and ordinary prerogatives of the judicial power. But that a court in Louisiana should render a judgment against a citizen of London or of New York, who had never set his foot in the State, nor had property within it, and was entirely unconnected with any pending or possible litigation, and on a simple matter between himself and his creditor, appears to us in conflict with all sound views of the administration of justice. What effect would be given to a judgment rendered in such a case, in other courts of the Union ? Can we expect that other States will recognise for an instant an infringement on the exclusive jurisdiction and right of protection, which they have over their own citizens and property within their own limits ? Nor do we think that the intendment of article 57 of the Code is changed by article 116 of the Code of Practice. The several articles of that Code concerning the appointment of curators to persons presuppose something upon which the jurisdiction of the court can properly be based. C. P. arts. 194, 195, 924, 963, 964. They must all be taken together, and construed with reference to, and in furtherance of the provisions of, the Civil Code, and not as creating what would be an anomaly in legislation.

We think the plea to the jurisdiction of the court, made by the curator of *William Hunt*, ought to have been sustained.

*Robertson* justifies his acts complained of in the plaintiff's petition, as done by him as marshal of the United States, under certain orders and decrees of the

<div style="text-align: right">DUPUY
v.
HUNT.</div>

Circuit Court of the United States, for the fifth judicial circuit and district of Louisiana, which he was bound to execute.

The material facts of the case are stated in the opinion of the court recently delivered in the case of the present plaintiff against *John B. Bemiss, ante* p. 509. In the present case we have not before us in evidence the whole record of the proceedings of the Circuit Court of the United States. The cause of action against *Robertson* is fixed in the petition as having taken place on or about the 26th of May, 1842, and consisted in his, *Robertson's*, wrongfully and illegally taking possession of the slaves, and delivering them to *Hunt*, and the testimony is confined to the sale of the slaves of that date.

We have before us the petition and order of seizure and sale in the case of *Tobias Gibson* v. *Davis, Curator*, of date the 2d Dec. 1841 ; the bill of *William Hunt* against the same party, and the service of the subpœna on the curator, on the 17th of February, 1842 ; the order of sale of the 19th of February, 1842, and the return showing the manner in which it was executed ; and the final decree rendered in favor of *Hunt* against the curator. It is therefore obvious, on the principles we have settled in the opinion we gave in *Bemiss'* case, that the plaintiff, curator of the estate of *Claudius Gibson*, has no recourse in damages against the officer executing the decree of the Court of the United States sitting in Chancery, under the very imperfect state of the records on which the defence is presented to us.

The judgment in favor of *Robertson*, appealed from, is therefore affirmed, with costs in both courts ; and the suit against *Hunt* is dismissed, at the costs of the plaintiff.