## No. 8697.

### R. & F. GARDERE VS. J. W. BLANTON ET AL.

35    811
121    629

Proof of title, in an action for damages against a mere trespasser, is not required to be as complete and satisfactory as that required in a petitory action for the recovery of the land.

When the trespass is not wilful but the result of mere inadvertence, the value of the timber when first cut is the measure of damages.

APPEAL from the Twenty-sixth District Court, Parish of Jefferson. Hahn, J.

*Alfred Grima* and *H. N. Gautier* for Plaintiffs and Appellees.

*Henry P. Dart* for Defendants and Appellants.

The opinion of the Court was delivered by

MANNING, J. The plaintiffs, alleged co-proprietors of a tract of swamp land in Jefferson Parish, sue the defendants to recover forty-five hundred dollars as damages for trespass in cutting down trees thereon for cross-ties.

Blanton derived his authority to cut the timber from one Faivre, with whom he had a written contract permitting him to cut several thousand ties for four cents a tie. Faivre claimed to be the owner of the land. The ties were sequestered, and writs of injunction issued prohibiting the demolition of the timber in future.

In March, 1881, Blanton applied to Rivière Gardere, one of the plaintiffs, to purchase timber of him, who told him he owned a large swamp, but most of the timber had been cut by himself for cross-ties for the Morgan Railroad, and it would not pay to cut what was left because of its remoteness. Blanton then applied to Faivre, who pointed out certain stones as marking his boundaries. It appears there had been a great bar of iron anciently placed as a bourn, and which the plaintiffs claim marked the boundary of their land, but it had sunk so much that when search was made for it after these troubles commenced, it was discovered only after prolonged efforts. Blanton had to dig ditches or drains through the land to float the ties. After cutting about six thousand ties, which occupied him four months, Rivière Gardere notified Blanton that he was cutting timber from the plaintiffs' land, and ordered him to desist. Blanton stopped at once. No more trees were felled, but the ties already cut were floated out. Blanton then went to Gardere and told him if he had been cutting timber from his land, he did it in ignorance—that he supposed he was cutting from Faivre's land, but if it was otherwise, he was willing to pay or to deposit the money to be paid to whosoever owned the land.

During these four months of Blanton's operations, Auguste Gardere, a son of one of the plaintiffs, had frequently hunted with dog and gun over the land from which Blanton was cutting the timber, and no suspicion of trespass on his father's land was entertained by him, and no complaint was made until in July he told Blanton he believed he was cutting on his father's land, and immediately search was begun for the Great Bar, and when found Blanton ordered his foreman to stop cutting, and it was stopped.

Much testimony was given upon this matter, but we are satisfied Blanton's trespass was not wilful and malicious. The evidence of title is conflicting and perplexing to the last degree. Numerous deeds are in the record. Two surveyors were examined, one of whom, Reynolds, retraced a line made by D'Hemecourt who had formerly surveyed the *locus*. The other, Blanchard, made a survey which seems to have been careful, and was certainly prolonged, occupying him fourteen days. The conclusion he reached creates doubt whether the timber was cut from the plaintiffs' land.

The proof of title in an action of this kind is not required to be as complete as in a petitory action between two claimants of ownership, and we think it is reasonably sufficient to entitle the plaintiffs to recover against a mere trespasser.

The testimony upon the quantity of timber cut from the disputed territory renders difficult an accurate estimate, both as to quantity and value. The plaintiffs' witnesses attempt to be precise, and in the effort display their unreliability. One, a laborer, counted the stumps of 1,190 freshly cut trees (and as to the freshness it is disproved) and values them at $1.50 each—another laborer values them at the same figures because seventy-five barrel staves can be made from each, and a third thinks each tree must be worth five dollars because his mother-in-law owns some trees, and she would not take less for them.

Mr. Rivière Gardere says he would not take two dollars a tree, but he has evidently in his mind the larger trees, which were not cut, and his estimate is tinctured by the prospective profits he supposed would have been derived from a use to which he had destined them.

The trees cut were from 18 to 20 inches in diameter, and two-thirds of the swamp is untouched. The precise number of trees cut is not proved, nor the number of cross-ties, but it is certain that all the trees were not cut from the plaintiffs' land. We do not think we can gather from the evidence that more than 2,800 ties were cut from the disputed land, and allowing four ties to each tree, the number of trees is 700, and the average value is fifty cents, or three hundred and fifty dollars in total.

Gardere vs. Blanton et al.

It is settled that the value of the trees when first cut is the measure of damages when the trespass is not wilful, but the result of mere inadvertence. Watterson vs. Jetche, 7 Rob. 20; Yarborough vs. Nettles, 7 Ann. 117. Lord Hatherley states the doctrine thus: when once we arrive at the fact that an inadvertence has been the cause of the misfortune, then the simple course is to make every just allowance for outlay on the part of the person who has so acquired the property, and to give back to the owner so far as is possible under the circumstances of the case the full value of that which cannot be restored to him in specie. And this statement of the then Lord Chancellor is quoted with approbation by the U. S. Supreme Court in the latest case upon this point. Bolles Wood. Ware Co. vs. U. S. 15 Reporter, 161.

Blanton's outlay had in part enured to the plaintiffs' benefit. The ditches and drains which he dug remain.

Blanton had pledged a part of the ties to Berkson Bros. for supplies furnished, and they intervened against the plaintiffs alone, and had judgment with privilege, but their costs were decreed against the defendants. This is error, but we are powerless to correct it. Blanton has not appealed from that judgment.

The judgment below allowed interest from judicial demand, which exceeds the prayer of the petition, which is for interest from the rendition of judgment.

In a supplemental brief the plaintiffs ask for a dismissal of the appeal. There is no motion for it, and the causes alleged are not those for which the court will dismiss ex proprio motu.

It is therefore ordered and decreed that the judgment of the lower court is amended by reducing the sum therein of twenty-eight hundred dollars to three hundred and fifty dollars, and the interest thereon to run from July 20, 1882, and that part of the judgment which perpetuates the injunction and dismisses the reconventional demand of the defendant is affirmed. It is further ordered and decreed that so much of that judgment as recognizes the plaintiffs as owners of the cross-ties and moneys sequestered in this suit is reversed, and they are recognised as having a privilege upon the ties for the payment of this decree, and so many of them as is necessary are ordered to be sold for its payment. It is further decreed that the defendants pay the costs of the lower court, and that Blanton the defendant have judgment against the plaintiffs for the costs of this appeal.

Poché, J., takes no part in this case, being absent when the argument was heard.

Rehearing refused.