Statement of the Case.
MONROE, J.
In his original petition, plaintiff alleges that he is a resident of Mississippi; that he and’ J. D. Lehmer (the latter being a resident of Ohio) own contiguous lands in the parish of Red River, through which the Texas & Pacific Railway Company, whose, agent “upon whom process should be served” is “of New Orleans,” is constructing a branch of its road; that said company is about to build a depot for the use of its patrons and itself upon Lehmer’s land, in accordance with a contract between them,, whereby, and in consideration of the building of said depot, Lehmer has agreed to cede to the company, for right of way and other purposes, a portion of said land; and *121 that said contract is illegal, as having been made in disregard of the rights of thé public, the site selected for the proposed depot being inaccessible and unsuitable. And he prays that a writ of injunction issue, inhibiting the building of said depot as proposed; that said Lehmer and said company be cited (the former through a curator ad hoc, to be appointed by the court), and, after due proceedings, that there be judgment perpetuating said injunction, annulling said contract, and commanding said company to build a depot in some suitable place in the neighborhood. A preliminary injunction was accordingly issued as prayed for, and a curator ad hoc appointed to represent J. D. Lehmer; and the curator thereupon, by way of exception, informed the court that his client had died more than six months prior to the filing of the petition, and prayed that the suit be discontinued.
There appears to have been a hearing,' at which the fact of the death was established, but no action was taken on the exception, regarded as a plea in abatement, other than the filing by the plaintiff of a supplemental petition, in which he alleges that he was unaware of the death of J. D. Lehmer when he filed the original petition, and prays that C. and G. Lehmer, executors of J. D. Lehmer, and also residents of Ohio, be cited, through a curator ad hoe, and made parties defendant in his stead; and, it having been So done, the newly appointed curator excepted to the jurisdiction of the court ratione personse et materise. In the meanwhile judgment by default had been entered against the railway company (though the record fails to show that any citation to the company had been issued or served), after which the company had also excepted to the jurisdiction of the court, alleging that the suit should have been brought against it in New Orleans. Their exceptions having been overruled, both defendants moved to dissolve the injunction on the ground that no legal bond had been given, and the motions were denied. The curator representing Lehmer’s executors then further excepted that the court was without jurisdiction to determine the location of a depot, for the reason, as alleged, that such authority is vested by the Constitution in a railroad commission, which exception was referred to the merits, and, it may be here remarked, was not thereafter passed on by the court. The railway company then answered, pleading the general issue, and, so far as the record shows, without further pleading on the part of the curator, or default against him, the ease was heard upon the merits, and it was proved that in January, 1902, a written contract was entered into at Cincinnati, Ohio, between J. D. Lehmer and the Texas & Pacific Railway Company, whereby Lehmer granted to the company a right of way through his land, in the parish of Red River, in consideration of the company’s establishing a depot thereon, and, for the same consideration, agreed to lay off a town, upon a 20-acre tract, on one side of the road, and grant to the company 20 acres on the other side, as also a strip on each side, in addition to the right of way, 50 feet in width, running the length of said 20-acre tracts. It was also proved that a regular depot had already been established at Howard, 6 miles north, and at Grand Bayou, 4 miles south, of Lehmer, as the proposed site is called, and flag stations at Westdale, about 2y2 miles north, and Olivetta, 2y2 miles south, of said site; that the site in question was selected by the engineer of the company because it is approximately equidistant from the depots already established, and maintains the average of distances between depots as observed by the company, but that when the selection was made the engineer was unfamiliar with the country, and, as a matter of fact, that said site is upon the lower end of a narrow ridge, extending to the northward, and has lakes, swamps, and bayous to the east, *122 south, and west, which render it practically inaccessible, save from the north. It was also proved that the country is thinly settled, and it may be deduced from the testimony that the only other site that could reasonably be selected for a depot, between Howard and Grand Bayou, would be on the plaintiff’s land, which lies to the north, and includes the Westdale flag station. There no proof that the people of the neighborhood are suffering any inconvenience from the lack of depot facilities. There is proof that the defendant company would prefer to withdraw from the contract which is here sought to be annulled. The trial resulted in a judgment for the plaintiff, annulling the contract in question, and further as follows, to wit:
“It is further decreed that the writ of injunction * * * be sustained and perpetuated in so far as to prohibit and restrain the * * * company from locating a depot * * * at said station of Lehmer under the terms and conditions of the contract herein annulled; the only effect of this decree being to annul said contract, * * * leaving said * * * company free to locate á station at such place on its line as the best interests of the public and of the said railroad may require.”
From this judgment both defendants have appealed.
Opinion.
It will be seen from the foregoing statement that a resident of Mississippi brings this' suit in the district court for the parish of Caddo against a railway company whose agent “upon whom process should be served” is domiciled in the parish of Orleans, and against the succession of J. D. Lehmer, through his executors, who are domiciled in Ohio; that the object of the suit is to prevent the railway company from establishing a depot on land lying in the parish of Red River, and belonging to the heirs of Lehmer, and, as a necessary incident to the accomplishment of that object, to annul a contract between the two defendants, to which the plaintiff is neither party nor privy, whereby the one agrees to establish the depot, and the. other has ceded and is obligated to cede certain land in the parish of Red River for right of way, depot, and other purposes. It will also be observed that the plaintiff asserts no right in or to the land which is in part the subject of the contract in question, from which, and from the facts that the defendants are domiciled and 'the land lies beyond the limits of the territorial jurisdiction of the court a qua, and that no^ conservatory process was asked from or could properly have been issued by said court with reference to it, it follows that that court could not have acquired jurisdiction upon the theory that this is a real action or an action partaking of the nature of a proceeding in rem, but that it must be regarded as a personal action, sounding in tort, to which, as and when instituted, the court a qua was without jurisdiction to compel either of the defendants to answer. Code Prac. arts. 41, 28, 32, 75, 89, 90, 162; Wisdom v. Buckner, 31 La. Ann. 52; Bouchard v. Parker, Adm’r, 32 La. Ann. 537. The question, then, is, by what means has such jurisdiction been acquired since the action was brought?
The learned counsel for the plaintiff answer that, as between the plaintiff and the-railway company, issue was joined by the judgment by default; that it was thereafter too late for the company to challenge the-jurisdiction of the court; that the other defendants are necessary parties to the suit;, and that,' when a nonresident is a necessary party to a suit between other persons lawfully in court, a curator ad hoc may be appointed to represent him.
The proposition first above stated is supported by authority. The exception to jurisdiction ratione personae is dilatory, and is. not allowed after judgment by default. Code Prac. art. 333; Cochrane v. Miller, 10 La. Ann. 140; McAlpine v. Jones, 13 La. Ann.. *123 409; Phillips v. Adams Machine Co., 52 La. Ann. 444, 27 South. 65. As to the second proposition, there can be no doubt that, for purposes of a suit brought by one disclosing a right of action in himself to annul a contract, the parties to the contract must be made parties to the suit. Pretermitting the inquiry whether plaintiff discloses such right, it remains to be determined whether a nonresident can be brought into a court of this state in any and every case pending between other parties, lawfully in court, in which his presence may be necessary in order to enable such other parties to obtain a judgment satisfactory to themselves, or to enable the court to render a judgment which will conclude all those who may have an interest in the issues to be decided. Article 162 of the Code of Practice reads:
' “It is a general rule in civil matters that one must be sued before his own judge, that is to say, before the judge having jurisdiction over the place where he has his domicile or residence, * * * but this "rule is subject to those exceptions expressly provided by law.”
The exceptions thus referred to as “expressly provided by law” extend to the following cases, to wit: Where there has been an actual seizure of property, an absent defendant may, through a curator ad hoc, and for the purposes of his interest in the property seized, be brought before the court of the place where such property is situated. Code Prac. arts. 163, 254, 260. Where the court is vested with jurisdiction of the juridical entities known as “successions” and “insolvencies,” the property of which by virtue of such jurisdiction is in custodia legis, an absent defendant may be brought into court in practically the same manner and for the same purpose as in the case first mentioned. Code Prac. arts. 164, 165. Where the nonresident is a member of a partnership, he may, for the purposes of his interest, be brought before the court of the place having jurisdiction of such distinct juridical entity. Code Prac. art. 165. The exceptions expressly provided by law also extend to actions or proceedings in the nature of actions in rem, as for revendieation or partition of real estate, or for the enforcement via executiva of mortgages, or for trespass or relating to real servitudes thereon, in which an absent defendant may, to the extent and for the purposes of his interest, be brought before the court of the place where the property is situated (Code Prac. arts. 163-165); to actions to enforce the collection of bonds given by the state and parish officers, in which nonresident sureties may be sued before the court of the place where the officer exercises his functions (Code Prac. art. 165); to actions against corporations for trespass or damages, in which the corporations may be sued in the court of the parish where the trespass or damage was committed (Code Prac. art. 165); to matters relating to warranty, though it has been held that the absentee can be called in warranty, not for the purpose of obtaining judgment against him, but only for the purpose of giving him notice of the existence of the suit (Code Prac. art. 165). Pagett v. Curtis, 15 La. Ann. 451. Where the defendant is a foreigner or has no known place of residence in the state, he may be cited wherever he is found. Code Prac. art. 165.
Another exception is provided in the following terms, to wit:
“When the defendants are joint obligors, they may be cited at the domicile of any one of them.” Code Prac. art. 165, No. 6.
And it may very well be argued that this exception was established because, under the law as it then stood, all joint obligors were necessary parties to any action for the enforcement of their obligation, and it no doubt frequently happened that they could not be found within the same jurisdiction. It remains, nevertheless, that’ the particular case thus presented, in which a defendant is permitted to be brought into a court oth *124 er than that of his domicile, is made the subject of express legislation, as required by ithe terms of the law to which it is thus made an exception; and it would seem to follow that, if such exception had not been provided in that way, it would never have-existed, and hence, though it might have been necessary, in order to bind any of them, that all joint obligors should be sued together, that such necessity would not of itself have been sufficient for the purpose, and that such a course could have been pursued only in cases where they were all domiciled, or, if nonresidents of the state, found, within the jurisdiction of the same court. Eventually the difficulties attending the application of the law as thus stated led to the abrogation of so much of it as had been held to require that all joint obligors should be made parties defendant in actions to ■enforce their obligations (Acts 1871, p. 19, No. 103), so that if it be true, as seems probable, that a joint obligor was allowed to be sued, in an action to enforce the joint obligation, before a court other than that of his domicile, because he was considered a necessary party to such suit, that reason no longer exists, and “cessante ratione cessat ipsa lex.”
Other exceptions are provided in cases involving personal status, as in some suits for divorce, in which the defendant may be sued in a particular court without regard to his or her domicile at the time, and in cases concerning legitimacy, in which the judgment of a particular court may be res judicata as to the world.
And there may be still other exceptions. It is not, however, pretended that the ease at bar falls within any of those which have been mentioned, and we have been referred to none and know of none which applies to it. If, as appears to be the contention, in the absence of any exception “expressly provided by law” to a rule which, in terms, requires that all exceptions shall be so provided, it could be said that the question here at issue should be governed by considerations of convenience, or which concern the furtherance of justice, and that a defendant should be compelled to litigate in a foreign tribunal in any case in which his presence is necessary, in order that other parties there litigating may obtain a judgment by which he will be concluded, a somewhat remarkable consequence would result, since, by way of illustration, the plaintiff herein might have brought this suit in Ohio, or, for that matter, in New Zealand, or in any other country where courts are established, and, with the concurrence of either of the defendants, have compelled the other, or as many others as might have been concerned in the contract sought to be annulled, no matter where domiciled, to defend themselves in the jurisdiction thus selected.
The learned counsel seem mainly to rely, as supporting this view, upon certain language used in the case of Dupuy v. Hunt et al. That was a case in which (though the report is not very full upon the subjecQ it appeared that the plaintiff, as curator of the succession of Gibson, sued Hunt and Robertson for certain slaves which were sold by Robertson, whilst acting as marshal, to Hunt, who carried them to Mississippi; .the cause of action relied on being, no doubt, that the sale was in some way illegal. The plaintiff alleged that Hunt lived in Mississippi and was in possession of the slaves, and judgment was prayed against him for them or their value, and, by supplemental petition against Robertson for the value of the slaves. A curator ad hoc was appointed to represent Hunt, and he excepted to the jurisdiction of the court, which exception was overruled by the trial judge. On the appeal, Eustice, G. J., said:
“It is to be observed that, in order to insure to the plaintiff the full benefit of his claims against * * * Robertson, there is no necessity of making Hunt a party to the suit, s: * * We have not been successful in find *125 ing any enactment of the Legislature or any recognized principle of the law which authorizes a plaintiff who has a cause of action against an absentee to bring him before our courts by causing a curator to be appointed to represent him. Conceding that article 57 of the Code, under the term ‘absentee,’ applies to persons who have never resided in the state, that article presupposes that the absentee has property in the state, which of itself would give a court jurisdiction, or that a suit be instituted against him. In our opinion, it only authorizes the appointment of a curator^ in suits which may lawfully be instituted against the absentee, and which are pending before the judge who is called upon to make the appointment, but confers no power to bring absentees into court on the simple demand of a creditor. If the absentee leaves his property without an administrator or agent, if it be attached at the suit of a creditor, or if an absentee becomes a necessary party to, a suit between other persons lawfully in court, in the furtherance of justice the law authorizes a curator to be appointed to represent him. There is then something on which the jurisdiction of the court is based, and the judgment rendered would be within the recognized and ordinary prerogatives of the judicial power. But that a court in Louisiana should render a judgment against a citizen of London or New York, who had never set his foot in the state nor had property within it, and was entirely unconnected with any pending or possible litigation, and on a simple matter between himself and his creditor, appears to us to be in conflict with all sound views of the administration of justice.”
And it was held that the exception should have been maintained. Dupuy, Curator, v. Hunt, 2 La. Ann. 562. This opinion is to be construed, of course, with reference to the case before the court, in which ease it was found that a resident of Mississippi, having no property in Louisiana, and who was not a necessary party to any litigation here pending, had been summoned, through a curator ad hoc, and held to answer before a court of this state, in an ordinary action sounding in damages. Whether a nonresident having property here could have been brought into one of our courts, merely by reason of that fact, at the suit of a person who asserted no right in or to such property, or whether such nonresident could have been brought into a Louisiana court merely because his presence was necessary to enable parties already in court to obtain judgment in a pending litigation, were therefore questions that were not involved in the case to be decided, and, being referred to only by way of illustration, were not dealt with in an exact or exhaustive manner. In a case, the opinion in which must have been handed down very shortly after that to which we have been referring, the question presented was whether, in a proceeding by attachment against a nonresident, any judgment could be rendered in personam for an amount exceeding that realized from the property attached; and Mr. Justice Rost, as the organ of the court, said:
“This question came before the former Supreme Court in the case of Hill & McGunnegle v. Bowman, 14 La. 445, and it was there held that proceedings by attachment are not only in rem, but also in personam. * * * After mature deliberation, we are unable to concur in that opinion. We do not believe, as it is there stated, that the Legislature of Louisiana has considered all persons, whether they were ever in this state or not, as amenable to our courts. Laws authorizing judgments in personam to be rendered against absentees, without citation, notice, or appearance, in direct actions nominally instituted against them, are subversive of all justice and common right. * * * The yie-jY taken of the rights and liabilities of absentees in the case of Dupuy, Curator, v. Hunt et al., 2 La. Ann. 562, is decisive of the question under consideration.” Broughton v. King, 2 La. Ann. 571.
Considering the language thus used, and considering also that until the case of Field v. Delta Company, 19 La. Ann. 36, was decided, it had never been held in any case in which the question was at issue that an ordinary action could be maintained against a nonresident upon the mere allegation that he owned property in this state, we are satisfied that in the ease of Dupuy v. Hunt nothing more was meant, in that connection, than to show that in the matter of acquiring jurisdiction through the property of the defendant, Hunt, there had not been even a beginning, and that in saying “that if an absentee becomes a necessary party to a suit between other persons, lawfully in court,” the learned chief justice probably had in contemplation certain cases in which such necessity may be a sufficient basis for the assumption of jurisdiction — e. g., those *126 affecting personal status, or where testamentary dispositions are at issue — -and that he did not of necessity mean to include eases such as that here presented. But if it were otherwise, and if the opinion meant all that the counsel for plaintiff contend for, it was not, as has been stated, in the respects mentioned, an opinion upon questions necessary to the decision of tile case then before the court, and, as construed by the counsel, would be in conflict with later decisions of this court and of the Supreme Court of the United States upon a matter concerning which the rulings of the high tribunal last mentioned are of a paramount authority. Thus-in Laughlin v. Louisiana & New Orleans Ice Co., 35 La. Ann. 1185, the syllabus reads:
“It is now the settled jurisprudence of the Supreme Court of the United States that, except in actions affecting personal status, or in those partaking of the nature of proceedings in rem, like suits to partition real estate, foreclose mortgages, or enforce privileges or liens, substituted service, as against a nonresident, can be effected, as ‘due process of the law,’ under the fourteenth amendment of the Constitution of the United States, only where, in connection therewith, property in the state is brought under the control of the court, and is subject to its disposition, by process adapted to that purpose. The question being federal in its nature, former jurisprudence of this court on the subject must yield to the authority of the Supreme Court of the United States.”
See, also, Bracey v. Calderwood, 36 La. Ann. 796; Hobson et al. v. Peake, 44 La. Ann. 383, 10 South. 762; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Dull v. Blackman, 169 U. S. 243, 18 Sup. Ct. 333, 42 L. Ed. 733.
It is not alleged that the establishment by the railway company of the depot at Lehmer is Illegal, otherwise than as a result of the contract between the company and the then owner of the land; and our conclusion is that the legality of the contract cannot be inquired into in this suit, for lack of jurisdiction as to the succession of J. B. Lehmer. Under these circumstances, and as there is no reason to suppose that the necessary parties can ever be brought before the court a qua, we are of opinion that the suit should be dismissed. It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; that the exception filed on behalf of the executors of J. B. Lehmer be maintained; and that, for lack of jurisdiction and want of proper parties, this suit be dismissed; the plaintiff to pay the costs in both courts. ■