No. 22,956
First Circuit Appeal

DARIUS M. FONTENOT v. R. L. BAILEY

(June 30, 1925. Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Timber—Par. 15.**
When the trespass is not wilful but the result of mere inadvertence, the value of the timber when first cut is the measure of damages. Therefore, where trees are cut the owner is entitled to the stumpage value.

2. **Louisiana Digest—Sequestration—Par. 10, 11.**
A writ of sequestration may only issue in aid of ownership or of a privilege. Therefore where plaintiff cannot identify the logs seized as having been cut from his land, the sequestration will be dissolved.

Appeal from the Parish of St. Landry, Hon. B. H. Pavy, Judge.

This is a suit for ownership of logs or their value coupled with a writ of sequestration.

There was judgment for plaintiff maintaining the sequestration and a money judgment upon failure to deliver the logs. Defendant appealed.

Money judgment reduced and sequestration dissolved.

R. Lee Garland, of Opelousas, attorney for plaintiff, appellee.

John W. Lewis, of Opelousas, attorney for defendant, appellant.

LECHE, J. Plaintiff obtained the sequestration of some 433 cypress logs situated

on the banks of a canal in the Parish of St. Landry. His demand is for the ownership of the logs or their value. Judgment was rendered in his favor for such logs as was cut from his land, the number and location therof not mentioned, and upon failure of delivery by defendant, for $1455.55. The sequestration of the logs was also maintained by the court. Defendant appealed.

Defendant, who is a resident of Avoyelles, filed a plea to the jurisdiction of the court ratione personæ. Personal service of citation was made on defendant in St. Landry Parish in Jan., 1924, and on Feb. 13, 1924, a preliminary default was entered against him. The exception to the jurisdiction of the court was filed in June, 1924. Such an exception is dilatory, and comes too late when filed after a judgment by default. C. P. 333; West vs. Lehmer, 115 La. 213, 38 South. 969. The lower court properly overruled the plea. Plaintiff claims ownership of these logs by virtue of a written deed from the Anchor Sawmills Company of the State of New York, dated Dec. 5, 1923. In this deed, all the timber on the land described in the deed is transferred to plaintiff. This transfer was made by Gardener, vice-president of the Anchor Sawmills Company, under authority of a resolution of its Board of Directors. The defendant contends that most of the logs seized had been severed from the land when plaintiff acquired, and that his sale could apply only to the standing timber. If this timber was cut before plaintiff bought, it is not clearly shown that he was aware of the fact. Plaintiff apparently purchased under the honest belief that he was buying all of the timber. Defendant, in his answer it is true claims the ownership of the logs, but it is equally true that according to his testimony, he lays no claim thereto as owner or possessor through any deed of transfer, lease or any other contract whatsoever. The fact is that he admits to have cut the trees, through his employees, without any legal right, and he has therefore no interest in questioning the validity of plaintiff's title thereto.

The important and much controverted question in the case is whether defendant in cutting these trees acted in good or bad faith. This must be ascertained in order that we may properly fix the amount of damages for which defendant must be held liable.

The trees in question were cut from swamp lands situated in the Parish of St. Landry. These swamps are owned by various owners. The defendant is a large timber operator who had under his control at the time, several thousand acres of these lands. He owned the timber on the Whitman tract which adjoins on three sides, the land from which these trees were taken.

McAdams, a witness for plaintiff, who testified that he was familiar with the tract of land in question from which these logs were removed, said that a good deal of confusion as to the lines exists in that section of St. Landry Parish, and as he expressed it: "Was the worst place I was ever in". Testifying further, he said sometimes the timber and lumber men could not help from getting over these lines. He gave an instance where 400,000 feet of timber were taken from lands in which he was interested and through a "mistake", but said that the line was not plain. This witness also said, it is true, that the boundary lines of plaintiff's land were well marked, and that he could not see how they could have crossed by mistake, but the foregoing statement taken from his testimony makes it apparent that much confusion existed in these lines and that an error could have been honestly made in reference thereto. The testimony of the other witnesses which we will hereafter

consider makes it still more evident that an error could have been fallen into, and in good faith, by any woodsmen felling timber in these swamps. Kimbal, another witness for plaintiff, testified that there were many lines in that locality, and that he had gotten confused, but "not often".

Perkins, witness for defendant, an employee of the Lake Swayzee Lumber Company which is running a sawmill not far from where the logs in question were taken, testified that he had been logging for 15 or 16 years, and never a year had passed that he had not cut timber across the lines of some other owner or proprietor, through error. He was asked if he had ever gone across the timber of some one else as the cypress in the instant case had been cut from plaintiff's land. His answer was that personally, he had not, but that his laborers had. W. R. Messick, a surveyor who made a survey of these lands for defendant, testified in reference to the lines existing in that section. He said in reference thereto that from his experience and observation, the situation existing there would present a confusing one to a layman or woodsman, unless he had been instructed by some engineer. R. Lee Robert made a survey of the land for plaintiff and stated in making the survey he had found the lines well marked on the trees; that they had checked up all right with his survey. It must be observed that this statement is from a surveyor. Marks on trees and other insignia of boundary lines are more easily ascertainable by men versed in that profession, than they are by ordinary laymen or woodsmen. His testimony in reference to the existing marks on the trees cannot be given the effect of destroying the evidence of the other surveyor, Messick, that the situation existing in that particular locality in reference to these lines, would be confusing to a layman or woodsman, unless he had been

instructed by an engineer, particularly when this statement is taken in connection with the proof of the other witnesses showing the confusion that exists as to these lines. The logs, the record shows, were cut by Chatman, defendant's employee. It is clearly established by the evidence that defendant directed him to follow certain lines in felling the timber, and cautioned him not to cross over the boundaries of other proprietors. Defendant, it is shown, did not have actual knowledge of the lines, and was guided in his instructions by a map on which appeared the boundaries of the various tracts of land in that vicinity. Chatman says about the 20th of November, he saw that McAdams and Kimball were looking over these lines, and thinking that he was cutting on the wrong tract, he immediately reported to defendant who ordered him to stop, and to go back west where he had been previously cutting. He stopped as ordered. He says that after that time not a log was cut from plaintiff's timber. Unquestionably, Chatman had fallen into an error as to the lines of these lands. The record shows defendant did not then know that his employees had been cutting logs on plaintiff's land, and that a few days thereafter discovered his error. He met plaintiff and made no attempt to avoid responsibility for these cuttings, but told him it was all the result of a mistake. He then offered to have an estimate made of the logs his employees had felled, and that he would pay for their stumpage value, or he would give plaintiff an equal number of trees of the same kind and quality.

In the R. & F. Gardere vs. Blanton, 35 La. Ann. 811, the court said:

"When the trespass is not wilful but the result of mere inadvertence, the value of the timber when first cut is the measure of damages."

The court had so held in Watterston vs.

Jetche, 7 R. 20; Ratliff vs. Ratliff, 7 La. Ann. 117, which were cited in R. & F. Gardere vs. Blanton, 35 La. Ann. 811, and also in Sibille vs. Eastham, 136 La. 557, 67 South. 364. In J. F. Ball & Bro. Lumber Co. vs. Simón Lumber Co., 121 La. 627, 46 South. 674, where only the value at the stump was allowed, the decisions above referred to are cited, approvingly. In the cases above cited by us the evidence showed that the trespasser honestly believed that he was cutting timber on his own property, and the court held that his acts were the mere result of inadvertence, and were neither wilful nor malicious. In some of the cases above cited it appeared that upon being informed that they were not cutting within the boundaries of their holdings, the parties immediately desisted from any further cuttings, and offered to pay for the stumpage value of the timber. Here, the defendant pursued the same course and as the proof shows, had instructed and cautioned his employees to be careful not to go beyond his lines in cutting the timber. It also appears in the case at bar, that there were many lines in those swamps which were perplexing to the woodsmen, and which doubtless caused the employees of defendant to fall into an error resulting in the removal of these logs from plaintiff's land. This was clearly the result of inadvertence, and not wilful. Plaintiff is therefore entitled to the stumpage value of the trees, as is held in the cases above cited. The trial judge found that defendant had cut timber estimated at 72,541 feet. The record sustains this conclusion. The stumpage value, as shown by the evidence, is not in excess of $10.00 per thousand feet. Judgment will be allowed plaintiff on this basis.

As to the writ of sequestration, plaintiff admits in his testimony, that he could not identify the logs which he had seized, as coming from his land and the testimony of other witnesses shows that many of the logs seized came from lands other than plaintiff's. Sequestration may only issue in aid of ownership or of a privilege, Suc. of Macheca, 147 La. 174, 84 South. 574. The fear that defendant might remove the logs, might have justified an attachment but not a sequestration. The writ must therefore be dissolved.

It is therefore ordered, adjudged and decreed that the judgment appealed from be reduced from fourteen hundred and fifty-five 55/100 dollars to seven hundred and and twenty-five 41/100 dollars, and that the writ of sequestration be set aside and dissolved at the cost of plaintiff, that said judgment as amended be affirmed, costs of appeal to be paid by plaintiff and all other costs, except of the sequestration, be paid by defendant.

ELLIOTT, J., dissents. Opinion may be found herein at p. 804.