847 So.2d 191 (2003)
Susan Carol Keenan McCONNICO, Plaintiff-Appellant,
v.
RED OAK TIMBER COMPANY, et al., Defendants-Appellees.
No. 36,985-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2003.
*193 Booth, Lockard, Politz, Lesage, Hayter & Odom by Mark W. Odom, Shreveport, for Appellant.
Bodenheimer, Jones, Szwak, et al by James P. Bodenheimer, Shreveport, for Appellee, Red Oak Timber Co.
Bethard & Bethard by James G. Bethard, Coushatta, R. Cody Mayo, Jr., Shreveport, for Appellee, Mrs. Ben T. Johnston, Jr.
Before BROWN, CARAWAY, and DREW, JJ.
BROWN, C.J.
In this timber trespass case, plaintiff, Susan Carol Keenan McConnico, appeals the amount of her damage and attorney fee award. Defendant, Red Oak Timber Company ("Red Oak"), answered, appealing the judgment against it under La.R.S. 3:4278.1, the "timber piracy" statute, and the denial of its indemnity claim against defendant, Mrs. Ben T. Johnston a/k/a Joel Doell Johnston, a co-owner of the land. We amend the judgment, and, as amended, affirm.

Facts
This case involves two tracts of land consisting of approximately 30 acres in rural Caddo Parish. Red Oak's agent, Ron Parault, identified Mrs. Johnston as the owner of some land in Caddo Parish, but not the particular 20 and 10 acre tracts involved herein, by reviewing the tax rolls of the Caddo Parish Assessor. Parault contacted Mrs. Johnston, who told him of the 30 acres at issue and gave him the tax notices for those tracts. Each year Mrs. Johnston received tax notices and paid the taxes for this property. Red Oak's representative asked Mrs. Johnston what the designation "et al" meant on the tax notices; she responded that her children had inherited their father's interest at the time of his death.
Mrs. Johnston had never met and did not know Mrs. McConnico. Mrs. McConnico was, in fact, an undivided one-half owner of the property, and her interest was readily discernable from the conveyance records.[1] The trial court concluded that Red Oak made no effort to search the public records to ascertain the true owners of the property.
On February 9, 1996, Mrs. Johnston sold all the timber on the two tracts to Red Oak for $4,000. The timber deed contract *194 Mrs. Johnston signed with Red Oak guaranteed title to the timber and promised to indemnify Red Oak for any damages arising out of the cutting or removing of the timber so long as Red Oak was acting in good faith. Red Oak was given 15 months to harvest the timber. Red Oak harvested the timber in May of 1996.
In May of 1999, some three years after the timber had been cut, Mrs. McConnico received a call from a local realtor about purchasing her interest in the property. The realtor informed Mrs. McConnico that the property had been "clear cut" some years before. Mrs. McConnico, who was 76 years old and in bad health, asked her son to inspect the property, which he did, and this lawsuit followed.
The trial court concluded that for purposes of La.R.S. 3:4278.1, Red Oak acted in good faith although it should have known that Mrs. McConnico owned half the timber. Accordingly, pursuant to Section C of the statute, Red Oak was held liable to Mrs. McConnico for one-half of three times the fair market value ($3,429.41) of the timber harvested, or $5,144.11. The court also concluded that the filing of the lawsuit constituted a demand for payment under La.R.S. 3:4278.1(D). Red Oak's failure to pay Mrs. McConnico within 30 days of demand made them liable for attorney fees in the amount of $2,523.98.
The court also concluded that Mrs. Johnston was unaware that Mrs. McConnico was a co-owner of the property and was, therefore, in good faith when she contracted with Red Oak. The court required her to return only one-half of the $4,000 sale price to Red Oak.

Discussion

Liability Under La.R.S. 3:4278.1
Red Oak alleges that the trial court erred when it applied La.R.S. 3:4278.1 to this case because it cut and removed the timber from the property in question "in accordance with specific terms of a legal contract or agreement" with Mrs. Johnston. The relevant portions of the statute provide the following:
§ 4278.1. Trees, cutting without consent; penalty
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement. (Emphasis added).
The last phrase of La.R.S. 3:4278.1(A), "or in accordance with specific terms of a legal contract or agreement," provides an escape from the imposition of treble damages. This paragraph is poorly drafted. It is not ambiguous, but rather contains patently bad grammar. This is illustrated by reading the highlighted operative language.

It shall be unlawful for any person to cut, ... any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement. (Emphasis added).
The meaning and intent of a law are determined by considering the law in its entirety and all other laws on the same subject matter; its interpretation should be consistent with its express terms and with the obvious intent of the legislature in enacting it. Stogner v. Stogner, 98-3044 (La.07/07/99), 739 So.2d 762. It is presumed *195 that the intention of the legislative branch is to achieve a consistent body of law. In re Succession of Boyter, 99-0761 (La.01/07/00), 756 So.2d 1122; Stogner, supra.
The statute expressly states that it is unlawful to cut and remove timber without the consent of "the owner or legal possessor." Thus, to give meaning to the final phrase, we must refer back to "the owner or legal possessor," that is:
It shall be unlawful to cut ... trees ... on the land of another without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement [with the owner or legal possessor].
La.R.S. 3:4278.1 must be read in pari materia with its companion statute, La. R.S. 3:4278.2. R.S. 3:4278.2 provides that a co-owner of land may sell his or her undivided interest in the timber; however, the buyer cannot remove the timber without the consent of at least 80% of the ownership interest in the land. La.R.S. 3:4278.2(A) and (B). Failure to comply with the provisions of the statute constitutes prima facie evidence of intent to commit theft by the buyer. La.R.S. 3:4278.2(E). Accordingly, reference to "the owner or legal possessor" in La.R.S. 3:4278.1 must be construed to mean "at least 80% of the ownership interest in the land."
We hold that La.R.S. 3:4278.1(A) allows a timber buyer to escape the imposition of treble damages if the buyer cuts and removes timber with "the consent of" or at "the direction of" or with "a legal contract or agreement" with "the owner or legal possessor," where "the owner" is defined, in co-ownership situations, as at least 80 percent of the ownership interest in the land.[2]
La.R.S. 3:4278.1(C) further provides:
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed, removed, or diverted, if circumstances prove that the violator should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees. (Emphasis added).
*196 In general, a third party dealing with immovable property is charged with knowledge and notice of the existence and contents of a recorded instrument affecting the property. Ignorance of such is culpable. Powell v. Dorris, 35,510 (La. App.2d Cir.04/05/02), 814 So.2d 763; Ridgedell v. Succession of Kuyrkendall, 98-1224 (La.App. 1st Cir.05/19/99), 740 So.2d 173. Thus, Red Oak is charged with knowledge of Mrs. McConnico's half ownership interest.
In this instance, Red Oak obtained the consent of only Mrs. Johnston, who, along with her children, represented ownership of only one-half of the land. Therefore, Red Oak's actions of cutting and removing the timber from the land without the consent of Mrs. McConnico, the owner of the other half, constituted a violation of La. R.S. 3:4278.1(A) and (C) and Red Oak is therefore liable for treble damages.
Red Oak's reliance on the specific terms of a legal contract with less than 80% of the ownership does not exempt it from liability under La.R.S. 3:4278.1.
The Award of Attorney Fees under La. R.S. 3:4278.1(D)
Red Oak next contends that the trial court erred in concluding that the plaintiff is entitled to attorney fees under Section D of La.R.S. 3:4278.1. That portion of the statute provides:
If a good faith violator of Section A fails to make payment under the requirements of this section within thirty days after notification and demand by the owner or legal possessor, the violator shall be responsible for the reasonable attorney's fees of the owner or legal possessor.
The trial court found that the filing of the petition constituted notification and demand for purposes of the statute. Red Oak contends that the trial court erred, and it is not liable for attorney fees, because plaintiff never sent it a demand letter, and the petition does not allege that Red Oak was a good faith violator, but that its violation was willful and intentional.
The statute does not provide any formal requisites for notification and demand. We find no cases which hold that the filing of a petition does not constitute a demand. For this reason, we believe the legislature intended to allow trial courts to decide this issue on a case-by-case basis. We note that Red Oak does not claim that it did not have notice of plaintiff's demand prior to the filing of the petition. Rather, it focuses solely on the argument that it did not receive a demand letter and alternatively, that the petition, if considered a demand, did not allege that Red Oak was in good faith but rather acted willfully and intentionally. Such a rigid interpretation would surely thwart the purpose of the statute. Accordingly, we find no error in the trial court's reasoning.

Damages
We turn now to plaintiff's appeal. Mrs. McConnico contends that the trial court erred in determining the "fair market value" of the timber under La.R.S. 3:4278.1. The trial court stated that the "best evidence of the fair market value of the timber" is "what it (the timber) sold for on the date it was cut," but then awarded an amount based upon the net profit Red Oak earned from the harvested timber. Based upon the testimony of the president of Red Oak, the trial court determined that Red Oak made a net profit of $3,429.41.
The trial court used the net profit figure as the "fair market value" of the timber. Because Mrs. McConnico owned an undivided one-half interest in the property, the court awarded Mrs. McConnico one-half of three times the "fair market value" (½ × 3 × $3,429.41). Obviously, *197 the trial court was confused. Red Oak paid Mrs. Johnston $4,000 for the trees, and according to its president, made a profit of $3,429.41 over the purchase price and other expenses. The trial court set the market value at $3,429.41, which is less than the $4,000 received by Mrs. Johnston.[3] Red Oak's agent, Mr. Parault, who bought the timber from Mrs. Johnston, testified that he had a price range for the purchase and that Mrs. Johnston took the first offer of $4,000. He was unsure of his highest limit but felt it would not have been greater than $10,000. The trial court's determination that the fair market value was less than the lowest offer was clearly wrong. Under the trial court's reasoning, Mrs. Johnston's fair market share was $2,000 while Mrs. McConnico's was only $1,714.50. The "net profit" analysis used by the trial court was legally incorrect, and we now review the case de novo. Scobee v. Brame, 98-564 (La.App. 3d Cir.10/28/98), 721 So.2d 977, writ denied, 98-2952 (La.01/29/99), 736 So.2d 833.
Prior to 1974, the measure of damages for the unlawful cutting of timber was as follows: if the trespass was reckless and willful, the trespasser was deemed guilty of moral bad faith and liable for the "converted" value as opposed to "stumpage" of the timber without allowance or deduction for costs and expenses.[4] Where the trespasser believed himself to be owner of the timber but should have known otherwise, either from information available to him or other ascertainable facts which would have placed a reasonably prudent man on notice, he was held to be in legal bad faith and the actual expenses incurred by him in converting the timber to lumber were deducted in assessing damages. In cases where the trespasser was in good faith (believed the timber belonged to him and had no valid reasons to suppose otherwise) he was held liable only for stumpage value. Kennedy v. Perry Timber Co., 219 La. 264, 52 So.2d 847 (1951). Stumpage value was defined as the value of timber when first cut. Fontenot v. Bailey, 2 La.App. 568, 1925 WL 3711 (1st Cir.1925).
The obvious implication from this layered damage assessment was that the most culpable defendant, i.e., the willful and intentional trespasser (one in moral bad faith), was taxed with the greatest measure of damages, whereas the least culpable trespasser, i.e., the defendant in good faith with no valid reason to suppose the timber did not belong to him, was taxed with the lowest measure of damages, namely the stumpage value of the timber.
The enactment of the treble damages statute (formerly R.S. 3:4278.1) in 1974 manifested "an intent by the legislature to impose a severe penalty (treble damages) upon those who disregard the property rights of timber owners." See Smith v. Myrick, 412 So.2d 677 (La.App. 2d Cir. 1982). In each version of the statute, the legislature has retained and codified the categories of trespasser culpability, i.e., moral bad faith, legal bad faith (good faith but should have known), and good faith. However, the basis of damages for each category of culpability is a single measure, *198 the "fair market value." Hence, in the current version of the statute: Section B penalizes the willful and intentional trespasser (moral bad faith) with damages equal to three times the fair market value of the trees cut, plus attorney fees; Section C penalizes the good faith trespasser who should have known his actions were without the consent of the owner (legal bad faith) with damages equal to three times the fair market value of the trees cut, but without attorney fees unless notice is given and disregarded. Finally, the good faith trespasser (who has no reason to suppose the timber does not belong to him) is not liable for treble damages under the statute. He is liable only for the fair market value. See, e.g., Morgan v. Fuller, 441 So.2d 290 (La.App. 2d Cir.1983), writs denied, 443 So.2d 596, 599 (La.1983), superseded by statute as stated in Saucier v. Bunkie Wood Products Co., 99-1072 (La. App. 3d Cir.12/15/99), 759 So.2d 794.
Although the legislature retained the jurisprudential degrees of culpability in a trespass case, it replaced the former measure of damages for the moral bad faith trespasser and the legal bad faith trespasser, i.e., the converted value of the timber with "fair market value." In Cook v. Mixon, 29,491 (La.App.2d Cir.08/22/97), 700 So.2d 1264, writ denied, 97-2443 (La.01/09/98), 705 So.2d 1101, this court stated that "[i]n the context of lesion and other settings, fair market value is consistently defined as the amount a willing and informed buyer would pay a willing and informed seller for a particular piece of property, with neither being under any compulsion to buy or sell." This court finds that "fair market value" refers to the amount a purchaser would pay for standing timber to be cut and removed.
In this instance, plaintiff and defendant presented expert testimony as to the value and volume of timber harvested from the 30 acres. Although both experts examined the same 30 acres and looked at the same stumps, the disparity between the volume of the timber harvested in plaintiff's estimate and defendant's estimate is great. Plaintiff's expert valued the timber at $46,436.80, while defendant's expert valued the timber at only $7,966.80. The disparity was primarily with respect to the estimated volumes of pine sawtimber and pine pulpwood. Plaintiff's expert estimated ten times more pine sawtimber, (91,330 bd. ft. at $400/mbf), than defendant's expert, (9,254 bd. ft. at $375/mbf), and three times more pine pulpwood than defendant's expert. Interestingly, each expert's estimated volumes of hardwood sawtimber and pulpwood were almost identical.[5] Prior to its offer to Mrs. Johnston, Red Oak's agent, Hamp Bryan, cruised the timber and estimated twice as much pine sawtimber than did Red Oak's expert (18,596 bd. ft. to 9,254 bd. ft).
Red Oak actually received $21,909.67 for the timber at the mill.[6] Plaintiff's expert commented on other tickets reflecting that Red Oak also sold timber during this time period without designating what particular tract it came from.
Each expert visited the site four to five years after the cut and counted each *199 stump. Plaintiff's expert valued the trees cut at $1,547.89 per acre, while defendant's expert valued them at $265.56 per acre. The great difference is difficult to reconcile. We note that Mr. Bryan cruised the property before it was cut and described the timber as "scrappy." We believe that $500 per acre or $15,000 appropriately represents the fair market value.
Section C of La.R.S. 3:4278.1 states that the good faith trespasser who should have been aware that his actions were without the consent or direction of the owner or legal possessor of the trees shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut.
Based upon this figure, Mrs. McConnico's damages are one-half of three times the fair market value, which is (½)(3)($15,000)=$22,500. Therefore, the judgment of the trial court is amended, increasing the damage award to $22,500.

Attorney Fees
In addition to treble damages, the timber piracy statute provides for additional recovery for the reasonable costs of litigation. We have found that under the statute Mrs. McConnico is entitled to an attorney's fee award. Plaintiff was awarded $2,523.98 in attorney fees. We cannot say that the trial court was clearly wrong or manifestly in error. We will increase the attorney fee award for this appeal, however, by $1,000 and award a total of $3,523.98.

Warranty
Red Oak alleges that the trial court erred when it did not require Mrs. Johnston to indemnify it for breach of warranty of title. The contract provides:
(6) Seller warrants that Seller is unaware of any reason or restriction that would inhibit Buyer from cutting and/or removing the timber described herein.... Seller also hereby indemnifies and hold buyer harmless with regard to any fines, penalties and damages that Buyer may be liable for as a result of cutting and/or removing said timber if Buyer was acting in good faith, ...
Red Oak also argues that La.C.C. art. 2500 provides it with a warranty against eviction. A buyer who avails himself of the warranty against eviction may recover from the seller the price he paid, the value of any fruits he had to return to the third person who evicted him, and also other damages sustained because of the eviction. La.C.C. art. 2603. We note that the warranty against eviction is implied in every sale unless modified by the agreement. La.C.C. art. 2503.
Under La.R.S. 3:4278.2, a co-owner can sell her undivided interest in the timber; however, the buyer cannot remove the timber until he gets the consent of 80% of the ownership. By using language guaranteeing against "any outstanding heirs (co-owners) not listed as sellers," Red Oak's warranty appears to be an attempt to avoid non-compliance with the 80% rule. We further note that Red Oak was aware of Mrs. Johnston's children's interest, yet did not seek their consent to the timber deed.
The testimony indicates that Mrs. Johnston was unaware that she, along with her children, were not the sole owners of the property. On the other hand, Red Oak should have known because of the public record, that one-half of the timber belonged to Mrs. McConnico. Red Oak cannot exculpate itself from its own negligence and constructive knowledge by relying on the warranty provision in the contract. Further, there is nothing that indicates that Red Oak proceeded upon the assumption that if Mrs. Johnston's title failed, it would be reimbursed for its *200 expenses in cutting someone else's timber. See Martel v. Hunt, 195 La. 701, 197 So. 402 (1940), a case involving an oil and gas lease and the court's limitation upon the warranty based upon the parties' consent and expectations.
We affirm the trial court's ruling that Mrs. Johnston must return $2,000 to Red Oak on the basis of her accounting obligation under La.C.C. art. 798 but reject Red Oak's warranty claim.

Conclusion
For the reasons stated herein above, we amend and increase the damages awarded by the trial court to $22,500, and the attorney fees awarded are increased to $3,523.98. In all other respects the judgment is affirmed at Red Oak's costs.
AMENDED, and AS AMENDED, AFFIRMED.
NOTES
[1] Mrs. McConnico testified that it "was his (Mr. Ben T. Johnston's) father who had sold it (the half interest in the property) to my dad...." Actually, her father obtained an undivided half interest from Frank Soloman in 1957. She also said that Mr. Ben T. Johnston contacted her once about "you're either going to have to buy me out or I'll buy you out," but "we never did get together."
[2] The First Circuit recently held that the procedures in La.R.S. 3:4278.2 for selling co-owned timber without prior notice that the timber is being cruised and offered for sale until after 80 percent of the co-owners have confected a buy-sell agreement violated a non-consenting co-owner's right to procedural due process, rendering the statute unconstitutional. See Allain v. Martco Partnership, 01-0614 (La.App. 1st Cir.04/17/02), 828 So.2d 587. The writ application has been docketed as an appeal. Allain v. Martco Partnership, 02-1796 (La.10/04/02), 826 So.2d 1132. We note our disagreement with the First Circuit.

Our opinion relies heavily on the strong public policy reflected in La.R.S. 3:4278.2 which describes Red Oak's failure to identify and consult all co-owners as presumptive timber theft. The statute thus alters any implication of Civil Code Article 798 suggesting that a single co-owner may produce a fruit or product of the immovable and owe only an accounting to her co-owner. Red Oak may not argue that it contracted with an owner of the property under Section A of La.R.S. 3:4278.1 because "owner" must be understood in light of the 80% rule of La.R.S. 3:4278.2 and not Article 798. The co-owner's dominion over the timber prior to the passage of La.R.S. 3:4278.2 was not absolute but subject to the rights of the other co-owners under Articles 798 and 803. Moreover, the procedural operation of the 80% rule can always be trumped by the 20% minority by their superior right to invoke a partition where the disputed value of their property will be judicially protected. Thus, the statute does not appear unconstitutional to this court. In any event, the strong legislative policy of the statute is now followed in our ruling in this case.
[3] As previously stated, Mrs. Johnston was required to return $2,000 to Red Oak.
[4] The timber industry has undergone changes since these jurisprudential rules were established. In the early industry, the timber cutter was frequently the saw mill operator, who converted the timber into lumber, and therefore into something more valuable, that is, lumber. Thus, the stumpage value was distinguishable from the converted value. The timber industry, however, like most industries in this country, has become specialized. The timber buyers and cutters generally do not mill the timber, but sell it to the mills. Complete access to mills is available for all tracts of land.
[5] Hardwood has less value than pine.
[6] We caution that using the amount the trespasser reportedly received for the stolen timber does not necessarily reflect fair market value. Suppose, for example, as argued by Justice Hawthorne in his dissent in Terry v. T.S. Butler, 240 La. 398, 123 So.2d 865 (1960), that the timber was virgin merchantable timber of a size suitable for lumber (and commanding the highest price), but the trespasser cut the stolen timber and sold it as firewood at the fair market value of firewood. In this case, however, the evidence does not support such a conclusion.