976 So.2d 336 (2008)
Sandra Blankenship STOCKMON, Plaintiff-Appellee
v.
Forrest Franklin VAN ALSTYNE II, Defendant-Appellant.
No. 42,922-CA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*337 Burt A. Bowers, Shreveport, for Appellant.
Lynn E. Estes, Jr., Shreveport, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
CARAWAY, J.
This dispute involves an employment-related contract in which the defendant/employer promised an employee an ownership interest in the company in the amount of 1% for each year of the employee's services. The defendant owned a sole proprietorship and admitted that he intended to incorporate his business and provide a stock benefit. Incorporation never occurred, and plaintiff never insisted on further evidence of the stock benefit. Eight years after the parties' written agreement, defendant sold the business. This resulted in this suit for an accounting to the employee for her ownership claim. The trial court recognized the validity of the contract and awarded plaintiff judgment for the value of her interest. The employer and his spouse appeal. Finding no error in the trial court's ruling, we affirm.

Facts
Plaintiff, Sandra Blankenship Stockmon ("Stockmon"), was employed by defendant, Forrest Franklin Van Alstyne II ("Van Alstyne"), in his insurance business in 1992. At that time, Stockmon was nineteen years old. She was employed as a secretary. Van Alstyne described Stockmon as a very good employee throughout the time of her employment from 1992 until 2004, when Van Alstyne sold his *338 agency. In 2004, Van Alstyne was 62 years old and had experienced health problems which led to his sale of the business.
This dispute concerns a contractual agreement between the parties reached in January 1996 following Stockmon's decision to leave employment with Van Alstyne for a better paying job. In an effort to prevent Stockmon's leaving, Van Alstyne made certain proposals which were listed on a one-page contract, as follows:
ONE YEAR CONTRACT
01-16-96
AGREEMENT BETWEEN SANDRA D. BLANKENSHIP AND F.F. VAN ALSTYNE
1. Raise effective 01-15-98  will be $323.00 per week less deductions.
2. Review every six (6) months with annual raise of $100.00 per month.
3. Christmas bonus according to company profit.
4. Five hundred dollar ($500.00) bonus to be paid 02-10-96.
5. Write health insurance on Sandra within the next seven (7) working days.
She will pay $75.00 per month toward her health insurance; we will deduct this weekly from her payroll ($17.31/ week). This will go toward her disability, maternity and major medical. She can add husband and child at anytime with her paying the cost.
6. Retirement plan will be started within seven (7) working days of this agreement with five (5) year provision from vesting.
7. Ownership of company will begin 01-01-96 in the amount of one (1) percent each year until Frank retires. Sandra will have the first option to buy the business from Frank at his retirement.
8. Sandra will have five (5) sick days per year and one (1) week paid vacation along with the usual paid holidays. After five (5) years of continued service Sandra will have two (2) weeks paid vacation.
9. Frank will pay for continuing education classes required to renew insurance license.
Both parties signed the agreement. While provision number 7 concerning Stockmon's ownership of the company is the subject of this suit, most of the other listed benefits were provided to Stockmon throughout the remainder of her employment. One exception was the promise of a retirement plan. Van Alstyne provided Stockmon instead with a life insurance policy in which her husband was named the beneficiary. She indicated at trial that she did not question Van Alstyne about the matter, trusting at the time that the policy with its cash value was what he intended to provide her as the "retirement plan."
In April 2004, Van Alstyne sold the agency for $500,000. Stockmon testified that she was made aware of the sale of the business after it had been transacted. She continued in the employment of the purchaser. Nevertheless, because of the "company" ownership rights she received in the 1996 agreement, she eventually brought this suit against Van Alstyne and his wife, Barbara Gail Van Alstyne (hereinafter "Gail"), for an accounting of Stockmon's interest in the agency. According to Stockmon, after the execution of the 1996 agreement, she and Van Alstyne never again discussed provision number 7 of the contract or the accrual of any profits from the business to which she might be entitled. According to Van Alstyne, later in 1996 he mentioned the matter to her with the idea of incorporating his business *339 and making her a minority shareholder. However, Van Alstyne testified that at that time Stockmon rejected any arrangements to formalize her ownership interest.
Following a bench trial, the trial court ruled in favor of Stockmon, enforcing her ownership provision of the agreement. She was recognized as an 8% owner of the business  one percent for each year between 1996 and 2003. She was awarded 8% of the sale price of the business ($40,000) plus her share of profits for certain profitable years less her share of the loss experienced by the business in the first four months of 2004. Van Alstyne appeals the judgment award of $56,595.85.

Discussion

I.
Factually and as a matter of law, Van Alstyne contests the ruling that he breached a contract with Stockmon. He asserts that the agreement had an express term of one year and was never renewed. Alternatively, he argues that the term for the accrual of Stockmon's ownership was ambiguous, such that the parties' disputed interpretations demonstrate no mutual consent to the contract. Also, Van Alstyne asserts that as an employment contract, the agreement cannot be for an indefinite or lifetime term. Regarding the fact dispute, Van Alstyne asserts that his claim that Stockmon renounced her ownership rights in September 1996 is corroborated by her failure to ever request a share of the profits or to assert to anyone her ownership position in his business.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include. La. C.C. art. 2051. When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose. La. C.C. art. 2054.
Whether or not a contract is ambiguous is a question of law. Hubbard v. Marilyn's Manhattan Grooming, Inc., 34,467 (La.App. 2d Cir.4/4/01), 784 So.2d 752. The trial court's interpretation of the contract is a finding of fact subject to appellate review for manifest error. Id. In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. La. C.C. art. 2056; Hubbard v. Marilyn's Manhattan Grooming, Inc., supra; Franklin v. Ram, Inc. (Of Arkansas), 576 So.2d 546 (La.App. 2d Cir. 1991). The burden of proving an alteration in the terms of a written employment agreement lies with the party alleging the change. Scallan v. Mark Petroleum Corp., 303 So.2d 498 (La.App. 2d Cir.1974), writ denied, 307 So.2d 370 (La.1975).
Before addressing specific language and terms of the parties' contract which Van Alstyne asserts in support of his arguments, the general context of the parties' arrangement should be considered. As an additional incentive to an employment relationship, employee compensation in the form of an equity interest in the business often occurs. The Louisiana jurisprudence reveals many employment disputes similar to the present controversy. Wood v. Toth Aluminum Corp., 367 So.2d 1338 (La.App. 4th Cir.1979), writ denied, 371 So.2d 833 (La.1979) (in addition to the employee's salary for a one-year employment contract, court affirms award of stock bonus worth *340 $20,000); Combs v. Howard, 481 So.2d 179 (La.App. 3d Cir. 1985), writ denied, 484 So.2d 671 (La.1986) (plaintiff's employment agreement to take over management of closely-held corporation for salary and 49% of corporate stock upheld); Damrill v. Iminorities.Com, Inc., 03-0739 (La.App. 4th Cir.2/18/04), 869 So.2d 169, writ denied, 04-0689 (La.6/4/04), 876 So.2d 90 (employee's contract for 100,000 shares of employer's stock upheld). Louisiana Business Corporation Law allows for compensation of employees by profit sharing plans and stock bonus or option plans. La. R.S. 12:41(B)(9)(d) and (e). Such plans would generally be an added compensation feature, distinct from the employee's salary or wages.
Significantly, Van Alstyne admitted on cross-examination that upon agreeing to the written terms of the contract in January 1996, he was bound to convey Stockmon an ownership interest in his business. He planned to implement that compensation benefit by incorporating his individual proprietorship and placing an initial 1% of the shares in Stockmon's name. We therefore find that from the mutual intent of the parties in January 1996, provision 7 of the agreement would allow Stockmon to receive as an additional employment benefit a 1% equity interest in the business for "each year" of employment. In keeping with the general context for employment benefits under a stock bonus type plan, Stockmon could increase her financial rewards by her continued efforts for profits for the business, and Van Alstyne could expect a higher level of Stockmon's contribution and loyalty with her status as a part-owner of the business.[1]
The primary challenge presented by Van Alstyne to his admitted agreement for Stockmon's ownership interest involves a factual dispute. Van Alstyne claims that Stockman later declared she had no desire to be an owner of the business and renounced the ownership benefit of the contract in September 1996. Stockmon denies this assertion, claiming that the parties never discussed the application of the ownership benefit of the contract after their signing of the initial agreement. Van Alstyne argues that the trial court's choice of Stockmon's version of these events is unreasonable because she failed for over eight years to claim any ownership interest and considered herself only an employee. This challenge therefore insists that the trial court's choice of Stockmon's testimony over Van Alstyne's was clearly wrong and manifestly erroneous. We disagree.
At the time of the 1996 contract, Stockmon was approximately 23 years old and Van Alstyne was a much older, established businessman in his fifties. Stockmon had been employed in the agency since Van Alstyne began the business in 1992 and had obviously become a valuable employee in the management of the agency's affairs. Nevertheless, she had not received education or experience in the formation of a corporation, partnership or similar business entity. She trusted Van Alstyne in the delivery of his promise for a "retirement plan" without questioning the life insurance policy which he provided instead. The trial court could therefore reasonably conclude that her silence regarding her ownership interest in the business reflected her uninformed trust in Van Alstyne. Additionally, from the accounting information revealed at trial, Van Alstyne reported no profits from his agency for the years 1996 through 1998. Accordingly, the *341 trial court could reasonably conclude that after January 1996, Stockmon never renounced the ownership interest in the business which Van Alstyne promised to provide her.[2]
Next, Van Alstyne argues that the parties' contract was limited to a one-year term and never intended to be extended beyond one year. While this is primarily a dispute concerning the interpretation of contracts, Van Alstyne cites Civil Code Article 2746 and certain jurisprudence, asserting that "an employment contract must have a specified term and cannot be for an indefinite period."
This assertion regarding the law of employment contracts is incomplete and Van Alstyne's arguments are misguided. The employer-employee contract is denominated as a "lease of labor" in the Louisiana Civil Code. La. C.C. arts. 2746 and 2747. Article 2747 provides that while the employer is at liberty to dismiss the employee "without assigning any cause," the employee "is also free to depart without assigning any cause." Robinson v. Healthworks International, L.L.C., 36,802 (La.App. 2d Cir.1/29/03), 837 So.2d 714. From this limited codal authority, the jurisprudence has recognized two types of employment situations: (1) the terminable at-will contract, and (2) the limited duration contract. Id. Under a limited duration contract, the parties have agreed to be bound for a certain period during which the employee is not free to depart without assigning cause and the employer cannot dismiss the employee without assigning any reason for such conduct. Id.
The present dispute does not concern whether, under the parties' contract, Stockmon remained an at-will employee in the year 1996 or thereafter, free to depart without assigning cause. Despite the incentives given by Van Alstyne to keep Stockmon in his employ, the contract never expressly states that Stockman was bound to remain in employment for one year. The forward looking benefits promised by an employer and expected by an employee upon the commencement of any employment relationship does not mean that the employer and employee have agreed to a contract with a fixed term of employment. Stockmon may have remained an at-will employee in 1996 under the present agreement but resolution of that issue is not central to this dispute.
From a review of the contract as a whole, its primary focus is on additional future benefits to Stockmon, which were not limited to one year. The agreement promised a $100 per month annual raise, and Stockmon testified that she received such raises for the years following 1996. The retirement plan which Van Alstyne never paid contemplated a build-up of benefits over five years before the account would vest in Stockmon. After five years, Stockmon's annual paid vacation time would increase. Stockmon's continuing education in insurance matters occurred in the following years, and Van Alstyne paid for that expense in accordance with the 1996 contract.
*342 Other than the caption of the agreement  "One Year Contract"  the provisions of the contract as a whole clearly indicate that if Stockmon remained employed with Van Alstyne for an indefinite period of time, she could expect the listed benefits to continue to accrue. In most instances, her promised benefits did accrue after 1996 in the stated manner. Likewise, regardless of any meaning Van Alstyne might attribute to the contract's caption concerning a desire to have Stockmon remain obligated in his employment for one year, after 1996, she unquestionably continued as an at-will employee, reaping the benefits under the January 1996 agreement until the sale of the business. Therefore, from our construction of the contract, there was no one-year term governing the extension of any benefits addressed in the contract. Like the other prospective benefits that were listed, provision 7 entitled Stockmon to a 1% ownership interest in the business for each year she continued to remain in employment.
The assignments of error challenging the validity and effect of provision 7 of the contract are without merit.

II.
Van Alstyne raised the exception of prescription in the trial court and now reasserts the defense pursuant to the prescriptive period of La. C.C. art. 3494 pertaining to the payment of wages.
We find the three-year prescription for wages inapplicable in this case. First, the suit was filed in October 2004, within months of Stockmon's discovery of the sale of the business. Her claim was primarily for the value of her 8% ownership interest which was lost by that unauthorized sale. Second, the additional accounting claim for her share of the business profits for the years 1999 and thereafter was a benefit tied to her ownership interest, which we do not view as direct compensation for her services.
Accordingly, we find the defense of three-year prescription inapplicable. Absent argument concerning any other prescription period, the ten-year period applicable to an accounting on a personal obligation applies. La. C.C. art. 3499; Ellias v. Ellias, 94-1049 (La.App. 3d Cir.3/1/95), 651 So.2d 939, writ denied, 95-832 (La.5/5/95), 654 So.2d 333.

III.
The next assignments of error by the appellants concern Van Alstyne's wife, Gail. They argue that since the contract involved an interest in the community-owned business, it required Gail's concurrence under Civil Code Article 2347. They also argue alternatively that because of the lack of her concurrence in the contract, the judgment holding her liable for the debt was in error.
Significantly, after the filing of Stockman's initial petition in this matter, Van Alstyne filed a peremptory exception of nonjoinder, alleging the insurance agency was a community business enterprise by virtue of his twenty-eight year marriage to Gail, making her an indispensable party to the proceeding.[3] A hearing on the exception never occurred. Instead, plaintiff amended her petition to add Gail as a party defendant.
Each spouse acting alone may manage, control or dispose of community property unless otherwise provided by law. La. C.C. art. 2346. The concurrence of both spouses is required for the alienation, encumbrance, or lease of . . . all or substantially *343 all of the assets of a community enterprise. La. C.C. art. 2347. According to Comment (b) to Article 2347, the community enterprise contemplated in this article is a business that is not a legal entity. The transfer of a partnership interest is the exclusive right of the spouse who is a partner. La. C.C. art. 2352.
An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. During the marriage, either spouse acting alone may incur a community obligation. Sciortino v. Bank of Louisiana, 97-1420 (La.App. 4th Cir.1/28/98), 705 So.2d 813, writ denied, 98-721 (La.5/15/98), 719 So.2d 463. Except for separate obligations specified under Civil Code Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations. La. C.C. art. 2361. McConathy v. McConathy, 25,542 (La.App. 2d Cir.2/23/94), 632 So.2d 1200, writ denied, 94-750 (La.5/6/94), 637 So.2d 1052.
Civil Code Article 2345 provides that "[A] separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation."
The Van Alstyne agency was a community enterprise exclusively under his management in 1996. Under La. C.C. art. 2347, we do not find that Van Alstyne's undertaking to provide Stockmon with a portion of the ownership of the business amounted to alienation of "all or substantially all" of the business. Therefore, no concurrence was necessary on the part of Gail for validity of this contract.
Likewise, the contract benefitted the community enterprise by retaining the services of an able employee. Therefore, the contract gave rise to a community obligation for which Gail's continued ownership in the community may be held liable in accordance with Civil Code Article 2345.
We find no merit in these assignments of error.

Conclusion
For the reasons expressed herein, we find no merit in the appellants' assignments of error and the trial court's judgment is affirmed. Costs of appeal are assessed to appellants.
AFFIRMED.
NOTES
[1] We find no merit in Van Alstyne's arguments characterizing the benefit of provision 7 as a donation. It was an onerous agreement requiring Stockmon to provide her employment services for each year in order to receive a percentage interest in the business.
[2] We likewise find no merit in the assignment of error pertaining to the trial court's exclusion from evidence of a January 2004 letter from Stockmon to Van Alstyne during the time of his health problem. In the letter, Stockmon acknowledges conflict on the job involving Barbara Gail Van Alstyne and her fear of being fired. Regardless of the trial court's evidentiary ruling, an employee who owns a minority interest in a business remains primarily an employee. The stock ownership interest which Van Alstyne intended to convey would not guarantee that Stockmon's employment, which was at-will employment (see discussion below), could not be ended by the majority will of the corporation.
[3] La. C.C.P. art. 735 indicates that Van Alstyne as managing spouse of the agency could be sued alone and that Gail was only a necessary party.