15 So.3d 302 (2009)
Eric ALEXANDER, Raymond Weber, Tamara Alexander, Robert J. Alexander, and Toya Alexander, Plaintiffs-Appellees
v.
Othell DUNN, Defendant-Appellant.
No. 44,272-CA.
Court of Appeal of Louisiana, Second Circuit.
June 3, 2009.
Rehearing Denied June 18, 2009.
*303 William A. Jones, Jr., for Appellant.
Culpepper & Carroll, PLLC, by Bobby L. Culpepper, Jonesboro, for Appellees.
Before GASKINS, CARAWAY and DREW, JJ.
DREW, J.
In this appeal, the issue presented is whether a co-owner of standing timber can be liable to his fellow co-owners for treble damages under La. R.S. 3:4278.1 when he sells the timber without the co-owners' consent. We conclude that the punitive "timber trespass" statute is inapplicable against co-owners. Accordingly, we reverse the judgment in part, amend the judgment in part and affirm the judgment as amended; we reject the demand by the appellees for additional attorney fees on appeal.
Othell Dunn and his wife Ella owned, as community property, a 24.72-acre tract of land in Lincoln Parish. After Ella died in 1986, her succession was opened; in 1991, the district court rendered a judgment of possession which recognized Othell Dunn as the owner of an undivided one-half interest in the immovable property. The judgment awarded the remaining one-half interest in the property to five particular legatees of Ella (her children): Toya Howell, Raymond Weber, Tamara Gayles, Robert J. Alexander, and Eric Alexander ("the co-owners"). Each legatee received an undivided one-tenth interest (a one-fifth interest of their mother's one-half interest) in the property.
In 1995, Dunn filed a petition to set aside the judgment of possession. That matter continued for many years until it was finally decided against Dunn in 2007. In the meantime, in 2004, Dunn contracted with a timber company to cut some of the standing timber on the property; he said that he had planted the trees too close together and that they needed to be thinned out. The company cut and removed the timber. Dunn claimed that the company paid him $300. Dunn did not inform or ask permission from the co-owners concerning the sale of the timber and he did not share the proceeds of the sale with them.
In 2005, the co-owners learned that Dunn had sold the timber, and in 2006, the co-owners filed the instant lawsuit against Dunn. Citing La. R.S. 3:4278.1, the plaintiffs *304 demanded treble damages and attorney fees from Dunn for the wrongful cutting of the timber. The plaintiffs did not file suit against the timber company but stated in their petition that they reserved the right to do so when they learned its identity. Dunn answered and reconvened, seeking reimbursement from the plaintiffs of one-half of the cost of taxes paid as well as his costs for reforestation and overseeing the property. An expert witness retained by the plaintiffs valued the timber cut from the property at $4,792.30. The court overruled Dunn's exceptions of prescription and no right of action.
The matter was tried in June 2008; the court considered the documentary evidence showing the ownership of the property and heard testimony from the timber value expert, one of the co-owners, and Othell Dunn. In August 2008, the court issued reasons for judgment. The court ruled that La. R.S. 3:4278.1 applied to this case and that Dunn had willfully and intentionally violated the statute; the court awarded the plaintiffs both treble damages ($7,188.45, three times one-half of the value of the timber) and attorney fees in the amount of $5,000.00. Dunn now appeals; the plaintiffs have answered the appeal and asked for an additional award of attorney fees. On appeal, Dunn argues, inter alia, that the trial court erred by applying La. R.S. 3:4278.1 to these facts and in finding that Dunn had acted in violation of this rule.
All the parties to this lawsuit are co-owners in indivision of a single piece of immovable property. La. C.C. art. 480 provides:
Two or more persons may own the same thing in indivision, each having an undivided share.
La. C.C. art. 797 provides, in part:
Ownership of the same thing by two or more persons is ownership in indivision.
The immovable property contained standing timber, an immovable, which was owned in indivision by the co-owners of the land and not a third person, so the timber was a component part of the land. La. C.C. arts. 462-464. Typically, standing timber is considered a capital asset, or product, of land unless the timber is managed as a tree farm or regularly exploited forest. See, e.g., Kennedy v. Kennedy, 96-0732 (La.11/25/96), 699 So.2d 351 (on rehearing).
In a typical case involving the fruits or products of a tract of land, La. C.C. art. 798 governs the relation of the co-owners in indivision:
Co-owners share the fruits and products of the thing held in indivision in proportion to their ownership.
When fruits or products are produced by a co-owner, other co-owners are entitled to their shares of the fruits or products after deduction of the costs of production.
See Pender v. Elmore, 37,690 (La.App. 2d Cir.9/24/03), 855 So.2d 930, fn. 2,[1]writ denied, 2003-2968 (La.1/16/04), 864 So.2d 632. An action for an accounting, a personal obligation, is subject to a prescriptive period of 10 years. La. C.C. art. 3499; Stockmon v. Van Alstyne, 42,922 (La.App. 2d Cir.2/13/08), 976 So.2d 336.
However, as this court recognized in McConnico v. Red Oak Timber Co., 36,985 (La.App.2d Cir.5/16/03), 847 So.2d 191, fn. 2, in cases involving timberland the provisions of La. C.C. art. 798[2] are secondary *305 to the rules outlined in a more specialized statute,[3] La. R.S. 3:4278.2, which provides, in part:
A. A co-owner or co-heir of land may execute an act of timber sale whereby he sells his undivided interest in the timber, and any condition imposing a time period within which to remove the timber shall commence from the date of its execution.
B. A buyer who purchases the timber from a co-owner or co-heir of land may not remove the timber without the consent of the co-owners or co-heirs representing at least eighty percent of the ownership interest in the land, provided that he has made reasonable effort to contact the co-owners or co-heirs who have not consented and, if contacted, has offered to contract with them on substantially the same basis that he has contracted with the other co-owners or co-heirs.
* * *
E. Failure to comply with the provisions of this Section shall constitute prima facie evidence of the intent to commit theft of the timber by such buyer.
Section A of this statute recognizes the rule allowing standing timber to be sold and become a separate immovable. Under this section and La. C.C. art. 464, Dunn had the right to sell his undivided interest in the timber to a third person without the consent of the other co-owners.
However, Section B requires a buyer to obtain the consent of at least 80% of the ownership interest in the land prior to actually cutting the timber. Sections B and E of this rule specify that the penalty for noncompliance falls to the buyer, not a co-owner. In McConnico, supra, this court recognized that a buyer who cuts the timber but has the consent of less than 80% of the ownership interest in the land is subject to the harsh penalty of the "timber trespass" or "timber piracy" statute, La. R.S. 3:4278.1, which provides, in part:
A. It shall be unlawful for any person to cut, fell, destroy, remove, or to divert for sale or use, any trees, or to authorize or direct his agent or employee to cut, fell, destroy, remove, or to divert for sale or use, any trees, growing or lying on the land of another, without the consent of, or in accordance with the direction of, the owner or legal possessor, or in accordance with specific terms of a legal contract or agreement.
This rule contains no explicit provisions governing the rights and duties of co-owners of timberland, and McConnico was a lawsuit by a co-owner against a timber company; no co-owner was a defendant.
In the instant case, the plaintiff co-owners have not sought damages against the timber company that harvested the timber. Plaintiffs sought and obtained an award under the timber trespass statute against a co-ownerwho has a less-than-80% share of ownershipwho sold the timber without the plaintiffs' permission. It is the application of the timber trespass statute to a co-owner of the land, rather than to a timber buyer, to which the co-owner defendant objects.
La. R.S. 3:4278.1 is a punitive statute and thus must be strictly construed. Hornsby v. Bayou Jack Logging, Inc., XXXX-XXXX (La.5/6/05), 902 So.2d 361; Sullivan v. Wallace, 37,399 (La.App. 2d Cir.10/20/03), 859 So.2d 245. After scrutinizing the language of this statute, we *306 conclude that the timber trespass statute cannot be applied to co-owners.
Initially, the facts in the instant case raise the question of whether the timber buyer here serves as an "agent or employee" of the co-owner seller. The seller entered into a contract with the timber cutter to sell the timber to the cutter; the buyer is not functioning as the seller's agent or employee in furtherance of the seller's interest. Although it is possible for a contract of mandate to serve the interests of the mandatory or a third person in addition to the interest of the principal, La. C.C. art. 2991, here the buyer and seller have competing interests and in no sense is the buyer acting to transact any affair on behalf of the seller. La. C.C. art. 2989.
Moreover, the statute is facially ambiguous with regard to co-owners, neither expressly including nor excluding these persons from its provisions. La. R.S. 1:4. However, the statute is violated only when a person acts with respect to trees growing or lying "on the land of another" and when this action is taken without "the consent of ... the owner[.]" In addition, the timber trespasser owes the penalty to "the owner or legal possessor of the trees," a phrase which clearly describes a person other than the wrongdoer as described in the statute. Because co-ownership of timberland is the subject of La. R.S. 3:4278.2, La. R.S. 3:4278.1 must be read in pari materia with La. R.S. 3:4278.2. Where two or more statutes deal with the same subject matter, they should be harmonized if possible; but if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Louisiana Associated General Contractors v. Louisiana Dept. of Agriculture & Forestry, XXXX-XXXX (La.2/22/06), 924 So.2d 90; see also generally La. C.C. art. 13.
Here, Dunn certainly acted without the consent of the other co-owners. Although older jurisprudence recognized this act as a "trespass,"[4] see Cotten v. Christen, 34 So. 597, 598, 110 La. 444, 447 (1903), later jurisprudence suggests that a co-owner who engages in wrongful conduct with regard to the whole property is not a trespasser with regard to his co-owners. Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955).
Finally, La. R.S. 3:4278.1 cannot be read to apply to co-owners without doing violence to the provisions of La. R.S. 3:4278.2. The latter statute allows a timber buyer to cut standing timber when the buyer has the consent of co-owners holding 80% of the ownership interest. Because La. R.S. 3:4278.1 does not explicitly refer to co-owners, it contains no exception for the "80% rule" in La. R.S. 3:4278.2. If La. R.S. 3:4278.1 applies to co-owners, then one co-owner who holds more than 80% of the ownership interest and permits timber to be cut in accordance with La. R.S. 3:4278.2 would nevertheless be liable to the other co-owners for treble damages under La. R.S. 3:4278.1 even though the timber buyer would escape the penalty because of La. R.S. 3:4278.2(B).
This contradiction cannot be what the legislature intended in enacting these statutes. The rules, like the Civil Code articles on co-ownership, recognize the truism that a co-owner ordinarily acts in his own economic self-interest with respect to his property. To apply the timber trespass statute to co-owners would allow the owner of a 10% share of timberland to recover *307 treble damages from the owner of a 90% share who, following La. R.S. 3:4278.2, obtains an excellent price for the timber and shares the proceeds with the 10% owner. Thus, in the context of co-owned timberlands, "any person" as expressed in La. R.S. 3:4278.1 cannot be read to include a co-owner because the penalty applies to those who cut timber "on the land of another." La. R.S. 1:3. Any other application of the statute would violate the principle holding that such penalty statutes must be strictly construed.
Because neither La. R.S. 3:4278.1 nor 3:4278.2 governs the rights and duties of co-owners of timberlands vis-a-vis each other, the ordinary rules of Title VII of Book II of the Civil Code apply. On this point, we respectfully disagree with our brethren on the Third Circuit. Prewitt v. Rodrigues, XXXX-XXXX (La.App. 3rd Cir.2/2/05), 893 So.2d 927.
Because Dunn acted without the permission of the other co-owners, the other co-owners have a right of action for their proportionate share of the proceeds of the timber sale. La. C.C. art. 798; compare Ellwood Oil v. Anderson, 26,907 (La.App. 2d Cir.5/10/95), 655 So.2d 694, writ denied, 95-1485 (La. 10/6/95), 661 So.2d 466. Their action, for an accounting, had not prescribed when it was filed. La. C.C. art. 3499. However, under these rules, the plaintiff co-owners are not entitled to an award of attorney fees, nor are they entitled to such an award on appeal. We find no error in the trial court's reliance upon the valuation of the timber supplied by the plaintiffs' expert; such findings are subject to the manifest error standard of review. Hornsby v. Bayou Jack Logging, supra.

CONCLUSION
Accordingly, the district court's judgment is reversed insofar as it awards attorney fees to the plaintiffs, and the plaintiffs' demand for additional attorney fees on appeal is rejected. The judgment awarding the plaintiffs damages for the cutting of the trees is amended to award the plaintiffs $2,396.15, the fair market value of their share of the timber and is, as amended, affirmed. Costs of this appeal are assessed equally to plaintiffs and defendant.
REVERSED IN PART; AMENDED AND AFFIRMED IN PART.
CARAWAY, J., concurs with written reasons.
CARAWAY, J., concurring.
I join in agreement with the majority's ruling interpreting the special Title 3 timber trespass statutes. Co-ownership is not the same as sole ownership, but it is still ownership which removes any notion of trespass.
I write to address further the Civil Code articles on co-ownership, and in particular, a co-owner's violation of the joint management requirement of Article 801. That article provides:
The use and management of the thing held in indivision is determined by agreement of all the co-owners.
In this case, there was no agreement by the co-owners for the management of their timberland and a violation of Article 801 occurred. Nevertheless, based upon the implications of the other Civil Code articles governing the co-ownership regime, any violation of the joint management rule of Article 801 is regulated by the Civil Code and not remedied with the imposition of punitive damages.
For various reasons a co-owner may violate the joint management rule, whether innocently or deliberately. There are disagreements and the lack of communication which inherently exist between co-owners. The co-owner may act unilaterally on the mistaken belief that the cutting of timber *308 is necessary to preserve the property. See La. C.C. art. 800. The thinning of closely planted pine timber may be necessary at a certain age of the timber. The tract may have been damaged by a storm or the infestation of insects. Just as our courts have difficulty characterizing the revenues from a properly managed pine timber tract as either a "product" or "fruit" of the land, a co-owner may view the timber as a crop to be harvested in a timely manner and act without the agreement of all other co-owners. While this will be a violation of the joint management rule of Article 801 in most instances, the co-owner is still acting in his own economic best interests which coincide with those of his co-owners. The Civil Code implicitly recognizes that this type of violation of Article 801 may occur and provides for the rule of reimbursement in Article 798. See also, La. C.C. art. 804 regarding the remedies for a co-owner's alteration and improvement of the co-owned property without the consent of the other co-owners. The code further provides for reimbursement for damages which a co-owner causes to the property. La. C.C. art. 799. Finally, when co-owners cannot agree and the type of controversy of this case erupts, the right of partition is the primary remedy for ending the conflict between them. La. C.C. art. 807. The Civil Code articles on co-ownership therefore provide a complete framework for remedying disputes between co-owners which afford the plaintiffs their remedy in this case without resort to a strained and improper interpretation of the timber trespass statutes.

APPLICATION FOR REHEARING
Before GASKINS, CARAWAY, PEATROSS, DREW and MOORE, JJ.
Rehearing denied.
NOTES
[1] See also the specific rule governing the usufruct of timberlands in La. C.C. art. 562.
[2] This is true also, to the extent these articles are implicated, with regard to the other articles in Title VII of Book II of the Civil Code.
[3] If there is a conflict between two statutes, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character. Kennedy v. Kennedy, supra (on rehearing).
[4] In some circumstances, a wood cutter may trespass as to a co-owner when he enters property with another co-owner's permission; see Sullivan v. Wallace, supra, citing Breaux v. Albert Hanson Lumber Co., 125 La. 421, 51 So. 444 (1910).