LOLLEY, J.
| ¶ This appeal arises from a judgment in which the 26th Judicial District Court, Bossier Parish, State of Louisiana, declared certain assets to be community property and awarded credit for such to former husband, Phillip Ray Haley. Former wife, Kathryn Wagner Haley, now appeals certain limited portions of the judgment partitioning the ’ community property. For' the following reasons, we reverse the contested portions of the judgment and remand to the trial court to redistribute the assets in accordance with this opinion.
FACTS
Phillip and Kathryn were married September 10, 1990, and their last marital domicile was in Bossier Parish, Louisiana. On August 10, 2011, Phillip filed a petition for divorce. A subsequent judgment, was rendered terminating the community of acquets and gains retroactive to the filing date of the original petition. The parties agreed by consent to most of the partition of the community property. A hearing was held to determine the classification of the currently growing timber on Kathryn’s separate property (the “standing timber”) and the funds within Citizens National Bank, account number 1906232 (the “bank account”). The trial court found both of the above disputed items to be community property.
During the marriage, in August 2001; Kathryn acquired ownership of an undivided one-half interest in a 120-acre tract of *204 land in Claiborne- ■ Parish, Louisiana (the “property”). The property was purchased from Kathryn’s aunt, Melba Skeen, by Kathryn and her sister through an agreement whereby Skeen delayed payment until the previously unexploited ^timber on -the property could be harvested and sold to pay the purchase price for the property. Phillip concurred in the act of acquisition, and it is undisputed that Kathryn’s interest in the property is her separate property.
After the clear cut, the property was reseeded with Loblolly pine trees. According to the testimony of Sam Crawford, consulting forestry expert, standing timber becomes merchantable after approximately 30 years. At the time of trial, the trees on the property were 11 years old and valueless if harvested in that condition. Crawford referred to the trees as being young “pre-merchantable” pines, but testified he used a present-day discounted cash flow analysis to determine that the current value of Kathryn’s interest in the standing timber was $66,044.00. His opinion was based on the standing timber becoming merchantable approximately 20 years from the date of trial, and having a future value of $3,000.00 per acre.
The bank account had a balance of $42,816.66 upon the termination of the community property regime. Kathryn’s share of the clear cut timber proceeds had been deposited into the bank account. She later received an additional payment from the sale of stumpage, which she presumably deposited in the bank account also. Kathryn testified that the bank account also contained funds from the'benefits of both her parents’ annuities paid upon their deaths. Funds from the bank account were used to reseed the property and pay for her father’s annuity before his death. Kathryn .claimed that all funds within the bank account are her separate property, but the trial court found that she failed to overcome the presumption that all property possessed by either spouse during the marriage is community property.
|3The trial court issued a ruling finding that the standing timber is a fruit of Kathryn’s separate property, and as such, community property. It also ruled that the entirety of the funds within the bank account was community property, finding Kathryn failed to prove otherwise. ' A subsequent judgment pursuant to the ruling was issued in favor of Phillip, and this appeal followed.
DISCUSSION

Standing Timber

In Kathryn’s first assignment of error she argues that the trial court erred in classifying the standing timber on her separate property as a “fruit” of the property, and, therefore, community property. We agree.
Tracts of land, with their component parts, are immovables. La. C.C. art. 462. Standing timber is a component part of a tract of land when it belongs to the owner of the ground. La. C.C. art. 463. Typically, standing timber is considered a capital asset, or product, of land unless the timber is managed as a tree farm or regularly exploited forest. Alexander v. Dunn, 44,272 (La.App.2d Cir.06/03/09), 15 So.3d 302, 304; see, Kennedy v. Kennedy, 1996-0732 (La.11/25/96), 699 So.2d 351 (on rehearing). Trees in. a tree farm or forest are by nature a crop, such as sugar or cotton, rather than a product or a mineral, IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 1993-1637 (La.App. 1st Cir.05/23/95) 657 So.2d 282.
The natural and civil fruits of the separate property of a spouse, minerals produced from or attributable to a separate asset, and bonuses, delay rentals, royalties, *205 and shut-in payments arising from mineral leases are ^community property. La. C.C. art. 2339. The Louisiana Civil Code defines “fruits” as things that -are produced by or derived from another thing without diminution of its substance. La. C.C. art. 551. Natural fruits are products of the earth or of animals, and civil fruits are revenues derived from a thing by operation of law or by reason of a juridical act, such as rentals, interest, and certain corporate distributions. Id.
In concluding that the standing timber was a fruit, the trial court made an eiro-neous finding of fact that Kathryn’s property was a tree farm. Since the fruit of separate property is community property, unless reserved, the trial court’s faulty reasoning led to the conclusion that the standing timber was community property. This was in error.
The Louisiana Civil Code articles on ownership specifically address how a court is to determine when standing timber may be treated as a fruit. If the property is not being used as a tree farm then timber is, by default, not a fruit, but a capital asset. The Louisiana Civil Code has established a test to determine when timber may be classified as a fruit. Comment (b) to La. C.C. aft. 551 states:
Trees are born and reborn of the soil, but they are ordinarily considered to be capital assets rather than fruits on account of their slow growth and high value. However, trees in a tree farm or in a regularly exploited forest may be regarded as fruits, because they are produced according to the destination of the property and without diminution of its substance. (Citations omitted).
Thus, a finding that standing timber may be classified as a fruit necessarily depends on a finding that a tree farm exists. The code does not., define “tree farm,” but the Louisiana' Supreme Court has set forth some determining | ¿factors for making a finding that a tree farm exists in Succession of Doll v. Doll, 593 So.2d 1239 (La.1992).
In Doll, a father made a disguised donation of property to one daughter before his death, and after his death, the father’s other children sought to recover the property through' collation. The property consisted of approximately 468 acres, of which 346 acres were naturally seeded forest and timberiand and the rest open pasture. Shortly after the donation, a plan was set into motion to ultimately have the property certified as a tree farm. A private forestry consultant was hired, trees were selectively marked: and 'bids were solicited for thinning. After thinning, pine seedlings were planted. After two years under this plan, the property was certified as a tree farming operation under a master management plan by the American Forest Council. The court specifically noted, “Dr. Doll rejected a $103,000 offer to clear cut the remaining timber, evidencing an intention to manage the property to provide sustained income.” Id. at 1249.
To define “tree farm” the Louisiana Supreme Court looked at the ordinary meaning of .the phrase," and also the commonly accepted definition of professionals within the tree farming industry. In doing so, it stated:
Webster describes a tree farm ás “an area of forest land managed in such' a way as to ensure continuous commercial production under a systematic program of conservation arid reforestation,” Similarly, the American Forest Council, the organization which administers a natiori-ál program to encourage enhanced management of forest lands (The Tree Farm System), 'designates tree farm as “a tract of privately owned forest managed to produce continuous crops of trees with added benefits of improved wildlife *206 habitat, watershed protection, - outdoor recreation, and aesthetic value.” Bango, qualified as an expert witness in forestry and timber management, offers yet another characterization of tree farm: |fi“A tract of land that could be planted trees or natural trees that has been managed by or under the advice of a forester, or managed by a forester where they have periodic thinnings of forest products ... so that you can get these products ... every five or six years ... without hurting the growth.” Id. at 1249.
In concluding the Doll property was a tree farm, the court provided:
From the foregoing we determine designation as a “tree farm” is premised upon the existence of management techniques aimed at securing continuous production of timber, a conclusion which comports with the principle of article 551 and comment b thereto. It is clear a tree farm can not be defined by reference to its character at the time of the growth, but rather by the land’s ability, through proper management techniques such as selective thinnings and plantings, to provide sustained yields. The timber sales at issue here were nothing more than selective thinnings intended to spur a fruitful and continuous yield over a prolonged stretch of time. Id. at 1249-50.
Most importantly, the Doll court emphasized that a tree farm produces continuous harvests of trees. It implied that “continuous” encompasses a period of five to six years, between harvests. Normally, without implementation of proper management techniques the natural time it takes for timber to grow and become merchantable is a lengthy period of time. Selective thinning and replanting provides sustained yields so .that the property managed as a tree farm provides continuous proceeds.
Here, the property had been previously unexploited. Kathryn did consult with a forestry expert prior to cutting the trees, and opted to clear cut and reseed the property with pine seeds. The decision to clear cut the property rejected the possibility of implementing a system of thinning and replanting. Further, the clear cut depleted the property, such that it would not be profitable again for another 30 years. As stated, Crawford testified that, at the time of trial, the standing timber on the property < consisted of 17young, pre-merchantable trees, about 11 years old, which would not become merchantable until approximately 2030. Thirty years between harvests is far outside the. range of the five to six years contemplated by the Louisiana Supreme Court .as “continuous” in terms of determining the existence of a tree farm. The evidence also showed that the property is occasionally looked after by Kathryn’s sister’s life partner and not professionally managed by a paid forestry consultant. It was never certified as a tree farm, and, while the Louisiana Supreme Court stated that certification is not essential for a finding that a tree farming operation exists, it is a persuasive factor. The property does not qualify as a tree farm under the current binding precedent, and the trial court erred in so finding. Thus, the standing timber may not be considered fruits as stated in comment (b) to La. C.C. art. 551.
If Kathryn’s standing timber was not a fruit, then how should it be classified? Unharvested standing timber is a component part of the immovable property on which it stands when the ownership of the land and the timber are united. La. C.C. arts. 462^1. Kathryn’s interest in the property, with its component parts, are her separate property.
Consider, Alexander, supra, a suit against co-owners for treble damages under the “timber trespass” statute, in which this court recognized the difficulty of charr *207 acterizing revenues from a properly managed pine timber tract. Id. at 308. Dunn was a widower who owned one-half of the community property and the children of his deceased wife owned the other half of the property. Dunn sold the timber without the permission of the Rfive children, who then filed suit against him. This court expressly held that the “trespass” statute did not apply to co-owners, 'concluding that the co-ownership articles of the Civil Code provide adequate recourse among co-owners of property. In addressing the classification of standing timber, this court stated, “the immovable property contained standing timber, an immovable, which was owned in indivisión by the co-owners of the land and not a third person, so the timber was a component part of the land.” Id. at 304; see also, La. C.C. arts. 462-4.
Ultimately, the trial court erred in finding that the standing timber on Kathryn’s separate property constitutes a fruit, and thus community property, because the Doll factors for determining the existence of a tree farm are not present. We reverse the ruling of the trial court, finding instead that this particular standing timber on the property does not constitute a “fruit” under the law and is Kathryn’s separate property.

Bank Account

In her second assignment of error,’ Kathryn argues the trial court erred in finding that she failed to overcome the presumption of community in proving the bank account was her separate 'property. The trial court noted that it found Kathryn’s testimony confusing and she lacked evidence to show with sufficient certainty that the bank, account funds had not been commingled with community funds. The trial court found the $42,816.66 previously held in the bank account to be community in nature, and as such, divisible between the parties.
[ 3Things in the possession' of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property. La. C.C. art. 2340. The party alleging the separate character of the property must establish that the property was acquired and paid for with separate funds by proof that is “fixed, positive and legally certain.” Thomson v. Thomson, 34,353 (La.App.2d Cir.01/24/01), 778 So.2d 736, 740. When separate and community funds are deposited into one bank account, this fact does not convert the entire account into community property. Fulco v. Fulco, 50,256 (La.App.2d Cir.11/18/15), 183 So.3d 573, 578. Only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all of the funds characterized as community funds. Id.
Louisiana' Civil Code article 2341 defines separate property:
The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse of for the loss sustained as a result* of fraud or bad faith in the management- of community ■ property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of *208 his separate property; and things acquired by a spouse as a result of a voluntary partition of the community during the existence of a community property regime.
Death benefits or proceeds of a life insurance policy with a named beneficiary other than the estate of the insured owner, do not form part of |1flthe owner’s estate either separate or community, but belong to the validly designated beneficiary. Succession of Jackson, 402 So.2d 753, 756 (La.App. 4th Cir.1981). The owner of the death benefits or proceeds is entitled exclusively to the proceeds when the policy accrues at death. Id. Timber cut from a spouse’s separate property has traditionally, been classified as separate property. See, 16 La. Civ. L. Treatise, 3:10. Proceeds from the sale of timber located on a spouse’s separate property do not fall into the community. Succession of Rugg, 339 So.2d 519, 522 (La.App. 2d Cir.1976), writ denied, 341 So.2d 897 (La.1977).
Evidence at trial indicated that the funds in the contested bank account originated from: the clear cut timber proceeds; . death benefits from Kathryn’s mother’s, annuity; and, death benefits from her father’s annuity. According to Kathryn’s testimony, she deposited the clear cut timber proceeds to into a Met-Life annuity for her father in the name of the Wagner Management Trust. When Kathryn’s father -passed in March 2010, the death benefits from the MetLife annuity were deposited into the bank, account. The statements from the bank account cover the period from July 2010 to October 2012. These statements evidence few transactions, and they were as follows:
• July 30, 2010: the bank, account was ■opened with a deposit of $51,795.48;
■ • August 26, 2010: Check written in the amount of $11,380.96 payable to Wagner Management Trust;
• February 15, 2011: cash deposit was made in the amount of $2,300.00;
In* August 31, 2011: check was written in the amount of $41,000.00 payable to Kathryn Haley; and,
• October 22, 2012: Kathryn withdrew the remaining $1,826.61,. and closed the account.
The trial court found that Kathryn’s separate funds became commingled with community funds. In its ruling, the trial court stated, “The evidence served to 'indicate that a portion of these funds originated from certain community timber proceeds.” The finding of fact by the trial court was clearly wrong. The proceeds from the sale of the clear cut timber on Kathryn’s separate property did not fall to the community, and, therefore, are properly classified as Kathryn’s separate property. Furthermore, Kathryn was a named beneficiary of her parents’ annuities, and any benefits received from those policies were her exclusive separate property. There was no commingling of funds, and all the funds in the bank account were clearly Kathryn’s separate property. The trial court was manifestly erroneous in finding otherwise.
CONCLUSION
Kathryn’s interest in the standing timber, which was miselassified as a community asset, was.valued at $66,044.00. The bank account, also miselassified as community property, contained $42,816.66 at the .time when the community regime terminated. These two items are indeed Kathryn’s separate property.
. For the reasons expressed, the portion of the judgment finding the standing timber - and bank • account to be community property is reversed, |1gand this case is remanded to the trial court to redistribute the assets in accordance with this opinion. *209 The costs of this appeal are assigned to Phillip Ray Haley.
REVERSED AND REMANDED.